## F. T. JOHNSON et al. v. STATE.

No. A-4063.    Opinion Filed Sept. 13, 1923.
(218 Pac. 179.)

. (Syllabus.)

1.  **Robbery—Necessity for Felonious Intent to Appropriate Property.** To constitute "robbery," the taking must in all cases be accompanied with a felonious intent, or animus furandi; the intent must be to appropriate the property likewise as in larceny.

2.  **Same—Absence of Intent to Steal—Forcible Taking by Owner.** If a party bona fide believing that property in the personal possession of another belongs to him takes that property away from such person with menaces and violence, he commits no robbery, for there is no animus furandi.

3.  **Same.** The owner of property is not guilty of robbery in taking it from the person of the possessor, even though he obtains it by menaces and violence.

4.  **Robbery—Question of Felonious Intent for Jury.** In all cases of this kind, the question whether the taking was with a felonious intent is one of fact for the jury.

Appeal from District Court, Adair County; E. B. Arnold, Judge.

F. T. Johnson and others were convicted of robbery, and they appeal. Reversed and remanded, with directions to dismiss.

T. M. McCombs and Hunt & Bauchamp, for plaintiffs in error.

George F. Short, Atty. Gen., and Baxter Taylor, Asst. Atty. Gen., for the State.

DOYLE, J. The information in this case in substance charges that the defendants, C. P. Fine, Charity Fine, F. T. Johnson, Frank N. Gipson, Gus M. Gipson and Lee Gipson, did, in Adair county, on or about the 17th day of September, 1920, unlawfully, willfully, conjointly, and feloniously, with

force and violence, and by putting in fear one Ethel Gooch, take from her person and presence $1,100 in lawful money, the personal property of the said Ethel Gooch, and a cashier's check for $5,000, issued by the Castle State Bank, of Castle, Okla., payable to Henry Gooch, and the personal property of Henry Gooch, with the felonious intent to permanently deprive the owners thereof and to convert the same to their own use. Upon the trial of the case the jury returned their verdict finding the defendants C. P. Fine and Charity Fine not guilty, and finding the defendants F. T. Johnson, Frank N. Gipson, Gus M. Gipson, and Lee Gipson guilty, leaving their punishment to be fixed by the court, and the court by its judgment sentenced each of said defendants to imprisonment in the penitentiary for the term of five years. To reverse the judgment they appeal.

The facts in this case are about as follows:

The defendants C. P. Fine and Charity Fine, his wife, an elderly couple, lived on a farm near Castle, in Okfuskee county, for about 30 years; the prosecuting witness in the case, Henry Gooch, being a brother of Mrs. Fine. Henry Gooch's mother died when he was quite young, and he was raised by Mr. and Mrs. Fine, who also had one child, Edwin Fine, who enlisted in the army in 1918. Mr. Fine had some money on deposit in a Castle bank, and in the early part of 1919 he withdrew the sum of $5,000. Mrs. Fine marked the bills by putting a cross on the 10's and a V on the 20's, and they hid the money about the place. That year Mr. Fine visited his son at an army camp in New Mexico, and later made another trip to Camp Dix, N. Y., to visit his son, and there the son died. On these trips he had a good portion of this money with him. The evidence tends to show that it was the fixed intention of Henry Gooch to take this money. On the 4th day of July, 1920, the money disappeared. Henry Gooch

was seen on the porch of the Fine home that day, and Mr. and Mrs. Fine insisted that Gooch had stolen their money. They went to him and tried to get him to give it back to them, but he denied any knowledge of it. They also caused his arrest on this charge, but the evidence was held insufficient to warrant a conviction. Later on Mr. Fine and his wife met Johnson and the Gipson boys, appellants, in Tulsa, and they sent some of them to see Henry Gooch. They went and brought Gooch down to where the Fines were camped on the Verdigris river. At that time Henry Gooch admitted to Mr. and Mrs. Fine and to these appellants that he had taken their money, and he promised to repay it and gave them a check for a portion of it. Before the check was cashed, payment on the same was stopped.

The evidence further tends to show that Mr. and Mrs. Fine in good faith believing that Gooch and Ethel, his wife, had their money, and, believing that any public effort that might be made to obtain the same would only cause the Gooches to hide it where it could not be found, secured the assistance of these appellants. They all camped about a mile from Gooch's house, and the next morning they went to Gooch's residence. Ethel Gooch tells the story of the alleged robbery as follows:

"Mrs. Fine approached the front door, and said, 'Open the door; I came after our money, and I am going to get it.' Then she jerked the screen door loose, and entered the house. Some of the others came in. They rushed to Henry, and Mrs. Fine ran to me, and demanded that I give her their money. I told her that we did not have their money, and she said I had it, and she was going to get it; 'if not we will kill you.' I had the money in my skirt pocket, and she jerked the pocket off, and took the money off of me. I had well on to $1-100, and a certificate of deposit for $5,000, payable to my husband. The money they took belonged to me; I had it

two years. I let her have the money because she threatened to kill me. They also took my husband's pistol.''

On the part of the defense, Charity Fine testified:

''I demanded my money that Henry Gooch had stolen, and he told Ethel Gooch to give it to me, and she did. It was my money that she gave me; every bill was mine, for I went to the window and found the marks I put on it over a year ago. When I went in the house Henry Gooch had a six-shooter, and I grabbed it, and hit him, and told him to get on back, and he did. I demanded my money, and he told his wife to give it to me. He said, 'Honey, give Charity her money; they have got me caught.' The first thing I did I went to the window and looked over it, and I said, 'This is the money; I want you all to come and see the marks on this money, and see that it is my money, for these are my marks.' Mrs. Gooch commenced to cry, and said it was money that Charley had paid Henry for haying; and I said, 'He certainly did not do haying for all of this.' Papa came in, and I said, 'Good morning, Pa; where have you been?' He said he had been out to the barn; and I said, 'Here is my money that Henry stole,' and he said, 'I know it.' ''

It appears that the defendants Johnson, Gus M. Gipson, and Lee Gipson are ex-service men, having served overseas, and the defendant Frank Gipson is a cripple, having but one leg.

The testimony is voluminous, covering several hundred pages, but the foregoing is sufficient to present the questions raised.

The assignments of error relate to rulings of the court in the admission and exclusion of evidence, and the sufficiency of the evidence taken as a whole to sustain the verdict; also that the court erred in receiving the verdict against appellants, who were accessories, when C. P. Fine and Charity Fine, the principals, were by the verdict of the same jury

acquitted. The Attorney General virtually admits that the judgment of conviction cannot be sustained, and he declines to take the contrary position before this court. In our opinion the record bears him out.

It is laid down in the books on the subject that it is a universal doctrine that to constitute what the law deems a crime there must concur both an evil act and an evil intent. I Bish. Crim. Law, §§ 22, 229. When the act is proved to have been done by the accused, if it be an act in itself unlawful, the law in the first instance presumes it to have been intended, and the proof of justification or excuse lies on the defendant to overcome this legal and natural presumption. 3 Greenl. Ev. §§ 13, 14, 18. And so the law is that, when evil intent is lacking, the act or omission which otherwise would constitute an offense is robbed of its criminality.

To constitute robbery the taking must in all cases be accompanied with a felonious intent, or animus furandi. If a party bona fide believing that property in the personal possession of another belongs to him take that property away from such person with menaces and violence, this is not robbery; and it is for the jury to say whether or not the accused did act under a bona fide belief. Where a person under a bona fide belief that the property is his own, obtains it by menaces, there is a trespass, but no robbery.

In State v. Hollyway, 41 Iowa, 200, 20 Am. Rep. 586, Miller, C. J., in the opinion says:

"In robbery, as in larceny, it is essential that the taking of the goods be animo furandi. Unless the taking be with a felonious intent it is not robbery. If a man, under a bona fide belief that the property is his own, obtain it by menaces, that is a trespass, but no robbery. * * * Though the defendant take the goods with violence or by putting in fear,

yet if he do so under a bona fide claim, it is not robbery for the reason that the felonious intent is wanting.''

See Rex v. Donnelly, 1 Leach, p. 196; 2 Am. Crim. Law, § 1697, and cases cited. And see 1 Russell on Crimes, 872.

In all cases of this kind, the question whether the act is done with a felonious intent is one of fact for the jury. People v. Hall, 6 Parker, Cr. R. (N. Y.) 642.

In 23 R. C. L. p. 1143, the rule is laid down as follows: ''The owner of property is not guilty of robbery in taking it from the person of the possessor, though he may be guilty of another public offense, such as larceny or trespass, etc. But if there be a fair bona fide claim of property or right in the prisoner, the offense amounts to but a trespass.''

The evidence in this case shows that the money so taken was the property of the defendants C. P. Fine and Charity Fine, and their only purpose was to retake that which belonged to them. The only interest appellants had was an interest based upon the rights of C. P. and Charity Fine. On the undisputed facts the intent of C. P. and Charity Fine was the intent of these appellants, and, if the felonious intent was lacking as to C. P. and Charity Fine, then the intent would also be lacking as to these appellants. Not only does the evidence show that C. P. and Charity Fine had no felonious intent, but the jury by their verdict of ''Not guilty'' so found. The evidence shows that the cashier's check was taken by mistake, being wrapped up in the roll of bills, and the court properly instructed the jury that, if this cashier's check was taken by mistake, and if in fact there was no felonious intent to take it, then the defendants should be acquitted.

It should be said in passing that, if C. P. Fine and Charity Fine were not guilty of robbery, then appellants could

not be, nor could appellants be guilty as accomplices. It is always necessary, in proving a case against a defendant charged as being an accomplice, to show the culpability of the principal. There can be no accomplice, until it has been shown that the principal committed the offense, and that the accomplice previously advised and abetted, or furnished the means by which the crime was committed by the principal.

For the reasons herein expressed, the judgment is reversed, and the cause remanded, with direction to dismiss.

MATSON, P. J., and BESSEY, J., concur.