## LUCCHESI AND BEVANS *v.* STATE

[No. 45, September Term, 1963.]

*Decided October 14, 1963.*

*Motion to stay mandate filed and granted November 12, 1963, upon terms set out in Order of Court issued.*

The cause was argued before BRUNE, C. J., and HENDERSON, PRESCOTT, HORNEY and MARBURY, JJ.

*Nelson R. Kandel,* with whom was *Alan H. Murrell* on the brief, for appellants.

*Franklin Goldstein, Assistant Attorney General,* with whom were *Thomas B. Finan, Attorney General, Frank H. Newell, III,* and *Gerard V. Caldwell, State's Attorney* and *Assistant State's Attorney,* respectively, *for Baltimore County,* on the brief, for appellee.

HORNEY, J., delivered the opinion of the Court.

Claiming that they were convicted of burglary and larceny on the uncorroborated testimony of accomplices, the defendants, Milton Bevans and Samuel Lucchesi, have appealed from the judgment entered on a general verdict of guilty by the court sitting without a jury.

Sometime between 2:00 p.m. on February 22 and 10:25 a.m. on February 23, 1962, the home of a stamp dealer was broken into and robbed of a stock of foreign and United States postage stamps, some Japanese propaganda match box covers and a portable television. At the time of the burglary, the dealer and his wife were away on a trip. None of the stolen property, with the exception of the match box covers and a few of the stamps, was recovered.

In August of 1962, Chester L. Jones was arrested on another charge and during the ensuing investigation was questioned about the burglary. He gave the police information which

led to the arrest of Joseph Falice, who, in admitting that he had helped plan and execute the burglary, implicated the defendants as the other burglars and larceners.

Joseph Falice, the admitted accomplice, was called by the State as a witness and testified to the effect that several days prior to the burglary he and the defendants had attempted to sell a small collection of stamps to the stamp dealer. On the day of the burglary, Falice and the defendants "went out to look at the house" again and "parked across the street" from it. Between 6 and 6:30 o'clock that night they "went back out to the place." The house was then unoccupied. To gain entrance the front door was forced open. The defendants entered the house and took what they wanted while Falice stood at the door as a lookout. The stamps were removed from the premises in four suitcases and a sheet or pillow case and were carried to Falice's house. The next day the defendants brought Chester Jones to the house to appraise the stamps. Some of the stamps and the match box covers were given to Jones and the remainder of the stamps was disposed of in New York. The proceeds from the sale of the stamps were divided equally between Falice and the defendants. Neither Falice nor Jones knew the other prior to their meeting on this occasion.

Chester L. Jones testified to the effect that sometime in late February or early March of 1962, the defendants came to see him and requested him to obtain information concerning the value of stamps. They returned two days later, and Jones, who had some knowledge of stamp values, accompanied the defendants to Falice's house. With the aid of a borrowed stamp catalogue, Jones estimated the stamps to be worth from $10,000 to $15,000. Jones purchased some United States commemoratives for $15 and the money was divided then and there between the defendants and Falice. Jones was also given an envelope containing some foreign stamps and the match box covers which he sold for $1. At the trial, Jones admitted that he knew the stamps he received were stolen property, but denied he had participated in the burglary or theft.

There was other testimony. The stamp dealer's maid testified that when she came to work on February 23, 1962, she found the front door broken open, the office in disorder and a pillow case missing. Another maid, employed in a home across

the street, had jotted down (for another reason) at about 2:00 p.m. on February 22, 1962, the license tag number of an automobile that had parked in front of her employer's home. The tag number was identified to be that of a motor vehicle registered in the name of one of the defendants.

Neither of the defendants testified.

The defendants contend that Chester Jones, as well as Joseph Falice, was an accomplice, and that there was no sufficient corroboration of the testimony either of Jones or Falice, or of both of them, to sustain the conviction. We hold that Jones was not an accomplice and further that, even if he had been, there was sufficient corroboration.

In order for Jones to be an accomplice it was necessary to show that he knowingly, voluntarily and with common interest with the defendants, participated in the commission of the burglary and larceny either as a principal or as an accessory before the fact. *Watson v. State,* 208 Md. 210, 117 A. 2d 549 (1955). See also 2 Wharton, *Criminal Evidence* (12th ed.) § 448, where it is said that "[t]he term 'accomplice' does not include a person who has guilty knowledge * * * or who was even an admitted participant in a related but distinct offense * * *," and that an accomplice is " 'one culpably implicated in, or who unlawfully co-operates, aids, abets or insists [sic] in, the commission of the crime charged.' "

There was no direct evidence that Jones was either a participant or an aider or abetter in the commission of either burglary or larceny. Nor did his acceptance of a part of the stolen property—since he made a reasonable explanation for having had possession of some of it—give rise to an inference that he was the thief. It may be, since he assisted indirectly in disposing of the stolen property, that he was an accessory after the fact in the crime of grand larceny, but he could not be an accomplice because he did not become connected with that felony until after its commission. *Watson v. State, supra.* See also 14 Am. Jur., *Criminal Law,* §112. Jones frankly admitted that he was a receiver of stolen property, but a majority of courts in other jurisdictions adhere to the principle that the receiver of stolen property is not an accomplice of the thief, so as to require corroboration in a prosecution of one accused of

larceny. See Annot. 111 A.L.R. 1398 and Annot. 53 A.L.R. 2d 817 and the cases cited therein. Cf. *Polansky v. State,* 205 Md. 362, 109 A. 2d 52 (1954), wherein it is indicated that the thief is not an accomplice of a receiver.

But even if it is assumed for the purposes of this case that Jones was also an accomplice and that his testimony would not be legally sufficient to corroborate the testimony of the admitted accomplice Falice, it is clear that the testimony of the other witnesses in the case was sufficiently corroborative to support the testimony of Falice (and to a lesser extent that of Jones) as to "at least some of the material points involved tending to show the guilt" of the defendants. That is all that was required. See *McDowell v. State,* 231 Md. 205, 189 A. 2d 611 (1963), and the cases cited therein.

The testimony of the neighbor's maid that she had jotted down the tag number which led to the identification of the automobile of one of the defendants supported the testimony of Falice that he and the defendants had parked across the street from the stamp dealer's home in the afternoon before the night of the burglary. The testimony of the stamp dealer's maid that the front door was damaged and that a pillow case was missing supported the testimony of Falice that the door had been forced open and that some of the stamps were carried away in a sheet or pillow case. And the testimony of the stamp dealer that his stock of stamps was worth approximately $15,000 supported the testimony of Jones that he estimated the value of the stamps to be between $10,000 and $15,000. There was sufficient corroboration to justify conviction of the defendants.

The judgment must therefore be affirmed.

Since the State printed in the appendix to its brief the omitted testimony the defendants should have included in the record extract, the motion to dismiss will be denied, but the defendants (who are not indigents) will be assessed with all costs.

*Judgment affirmed; the appellants to pay the costs.*