## BROWN *v.* STATE

[No. 40, September Term, 1964.]

*Decided November 13, 1964.*

The cause was argued before HENDERSON, C. J., and PRESCOTT, MARBURY, SYBERT and OPPENHEIMER, JJ.

*Harper M. Smith* for appellant.

*Robert L. Karwacki, Assistant Attorney General,* with whom were *Thomas B. Finan, Attorney General,* and *Leonard Kardy* and *James J. Cromwell, State's Attorney* and *Deputy State's Attorney,* respectively, *for Montgomery County,* on the brief, for appellee.

MARBURY, J., delivered the opinion of the Court.

This appeal involves the renewal in this modern day of the

age old crime of "horse thievery," and concerns the plight of "Bo Bo Bean Bag," a Shetland pony, and seven of his equine companions. In August 1962, Mrs. Jacqueline S. Sehnert was the lessee of a farm, part of which fronted on Seneca Creek, in Montgomery County, on which she operated a riding school and summer camp. This equitation school was separated from a farm leased by William S. Brown, appellant, and his son-in-law, by property owned by Dr. Andrews, which was vacant at the time of the events involved in this case. On August 6, 1962, Mrs. Sehnert departed for a week's vacation, and the operation of the riding school was left in the charge of Mr. Clark Adams, a counsellor employed by her. At this time there were sixteen horses on the Sehnert farm used in connection with the riding school. She was the owner of ten of these horses.

The appellant had been engaged with his son-in-law in the horse training and feed business for a number of years and at that time conducted this operation on the farm occupied by him. In May 1962, he had placed an advertisement in a horse dealers' journal offering brood mares for sale, and in response to its publication was contacted by Frank Dilda, a horse dealer operating in Ohio. In July 1962, Mr. Dilda visited appellant's farm where he purchased two brood mares, and was told by appellant that he could obtain more horses of the type he wanted at a later date. Pursuant to this understanding, Dilda, accompanied by his sister, Mary Jobie, drove to Maryland on August 6, 1962, with his horse trailer. He contacted the appellant, offering to buy horses. However, Brown had been unable to obtain the type of horse in which he was interested. On August 8, the appellant did offer to sell Dilda a group of horses which he showed him in a fenced pasture adjoining Brown's barn. Dilda was not interested in any of these horses. When the appellant said that he was anxious to sell the horses but that there was no ready market for them in Maryland, Dilda then volunteered his opinion that the best place to sell them was at the Jamestown Livestock Commission Market, operated by Edwin Payne and his wife, in Jamestown, Pennsylvania, and agreed to help transport the horses to this market. Brown led the horses from the pasture where they had been grazing to his barn.

On August 9, Dilda loaded five of the horses in his trailer

and the appellant placed five others in his trailer. They both proceeded to Dilda's farm in Ohio, where they arrived on August 10, and on that same day delivered the horses in the appellant's trailer to the livestock market in Jamestown, Pennsylvania. The following day, four of the horses which had been transported from Maryland to Ohio by Dilda were taken to Jamestown, it having been decided that the pony, Bo Bo Bean Bag would be left on Dilda's farm. The appellant and Dilda were told that these nine horses would be offered for sale on August 16. Brown was indebted to Dilda in the amount of $850, and it was agreed that the horses would be sold in Dilda's name at the auction, when he would deduct from the proceeds of sale the debt owed by the appellant. Subsequently, the horses were sold producing a net return of approximately $1100.

When Mrs. Sehnert returned from her vacation on August 13, she was advised by Clark Adams that most of the sixteen horses left in his care had disappeared. Subsequent search for the animals failed to disclose their whereabouts, and Mrs. Sehnert notified the Montgomery County police, who joined in the search. In the course of this investigation, Mrs. Sehnert discovered tracks of the horses from her farm across Dr. Andrews' property to the farm operated by the appellant. Further investigation revealed that nine of the missing horses were sold on August 16, 1962, at the Jamestown Market. Through her own efforts, implemented by legal proceedings, in one instance, Mrs. Sehnert was successful in recovering four of the eight missing horses which she owned and she was apprised of the whereabouts of one more, but at the time of trial had not yet succeeded in recovering possession of it.

Both appellant and Dilda were indicted for grand larceny and for receiving stolen goods in connection with the conversion of Mrs. Sehnert's horses. Prior to the trial of appellant, Dilda was granted immunity by the State's Attorney in order to procure his testimony in support of the indictment against the appellant. On January 14, 1964, Brown was arraigned, entered a plea of not guilty, and elected a jury trial. A protracted trial of three days immediately ensued. On the morning of January 16, the trial judge stated to respective counsel that on January 15, after the conclusion of the proceedings for that day, two

jurors separately approached him in his chambers, each with a request that the trial judge submit on his behalf, a question to one of the witnesses in the case so that certain testimony could be clarified. He informed the two jurors that the proper procedure was to prepare the question in written form and present it to him in open court when the trial resumed the next day. The questions of the two jurors were then received by the court before the case was submitted to the jury for deliberation. Counsel for both sides agreed that question number one had been answered by the testimony, and did not need to be answered. With regard to the second question, it was stipulated by respective counsel that the witness Dilda, having departed and being no longer available, could not offer any further testimony on the question propounded. Concerning this question, the court, without objection from either counsel, related to the jury the court's knowledge in regard to the methods by which horses are sold at auction. The jury returned a verdict of guilty on the first count, grand larceny, and not guilty on the second count, receiving stolen goods; and Brown was sentenced to eight years in the Maryland Penitentiary, from which judgment and sentence he has appealed.

Here he contends that the trial court committed reversible error by communicating in chambers with two members of the jury during the trial of the case out of the presence of the appellant; that the testimony of the alleged accomplice, Dilda, was not sufficiently corroborated; and that the evidence was insufficient to convict the appellant of the crime of larceny.

The appellant contends that Maryland Rule 775, providing that: "The accused shall be present at the arraignment, at every stage of the trial including the impaneling of the jury and the return of the verdict, and at the imposition of sentence, * * *" was violated by the trial judge when an attempt was made by two jurors to communicate with him privately with regard to the case. We find no reversible error in the actions of the judge. Two jurors went separately to his chambers indicating a desire to submit a question for answer. He instructed the jurors to wait until the resumption of the trial the following morning, when they could put the questions in writing, hand them to the bailiff, and he would call counsel to the bench. The record

shows that the audience with the two jurors was thus summarily terminated by the trial judge, with no attempt to answer the questions which they posed and with no other discussion of the case. The actions of the judge under the circumstances were prudent and not prejudicial to the appellant. *Midgett v. State,* 216 Md. 26, 139 A. 2d 209.

When the jury entered the box for the proceedings on January 16, two questions in writing were submitted to the trial judge, both of which were discussed with counsel for the appellant and for the state at the bench out of the hearing of the jury. It was agreed that the first question dealing with the capacity of the trailers used by Brown and Dilda to transport the horses to Ohio had already been answered in the testimony previously given at the trial. The second question asked whether, when a horse is sold, the seller gives a bill of sale to the buyer; and if this is the case, the juror wished to be informed as to who signed the bill or bills of sale given to the purchasers of the horses in question at the time of their auction on August 16, 1962, at the livestock market. Since Dilda was not present, the trial judge explained to counsel that he had had some experience with the auctioning of horses and was capable of explaining auction procedure to the jury so long as there would be no objection by counsel to his doing so. The appellant's counsel, as well as the State's Attorney, agreed to this procedure. Here, the appellant was present in court when assent was given by his counsel. It is well settled that where present in court and represented by competent counsel, an accused is bound by the actions and concessions of his counsel. *Canter v. State,* 220 Md. 615, 155 A. 2d 498; *Lenoir v. State,* 197 Md. 495, 80 A. 2d 3. Furthermore, in the absence of any objection thereto by the appellant below, he has no standing to attack this procedure on appeal. Maryland Rule 885; *Brown v. State,* 230 Md. 467, 187 A. 2d 683; *Martel v. State,* 221 Md. 294, 157 A. 2d 437. An accused in a criminal proceeding who desires to preserve for review on appeal a complaint of an alleged impropriety, or of a remark made by the trial judge during his trial, should either move to strike it out or in the alternative move for a mistrial. *Daniels v. State,* 213 Md. 90, 131 A. 2d 267; *Bryant v. State,* 207 Md. 565, 115 A. 2d 502. In the in-

stant case, no objection was made to the procedure adopted by the trial court. Under these circumstances, the remarks of the trial judge to the jury were properly before it for their consideration in connection with the evidence offered in the case and cannot now be claimed to have constituted reversible error. Moreover, under the testimony in the case the judge's explanation of auction procedure was perhaps beneficial to the appellant's defense.

The appellant next complains that the testimony of Dilda as an accomplice was not sufficiently corroborated. Dilda testified as to his connection with Brown and to the appellant's participation in the taking of Mrs. Sehnert's horses from the Brown farm to Jamestown where they were sold. He further testified to the appellant's actions concerning the sale of these horses at the livestock market. He pointed out that he first saw the horses grazing in the pasture adjoining appellant's barn. Even though he testified that he assumed the horses belonged to the appellant, the deducible inference from his conduct in transferring these horses to Ohio without requiring any proof of ownership from Brown, led to his indictment for grand larceny and receiving stolen goods. Dilda's participation in the taking and asportation of the horses branded him as an accomplice of the appellant in this case. *Lucchesi, Etc. v. State,* 232 Md. 465, 194 A. 2d 266; *Watson v. State,* 208 Md. 210, 117 A. 2d 549. It is also significant that the appellant defended the indictment brought against him on the theory that he had nothing whatsoever to do with the stolen horses. He testified that Dilda came to his farm with six horses obtained from an unknown source, and that he accompanied him to Ohio for the purpose of transporting two of these six horses to Dilda's farm. He denied ever being at the Jamestown market where Mrs. Sehnert's horses were sold, but his presence was amply supported by the police investigation which produced evidence independent of the testimony of the accomplice. *McDowell v. State,* 231 Md. 205, 189 A. 2d 611; *Fulton v. State,* 223 Md. 531, 165 A. 2d 774. The corroborative evidence must support the testimony of the accomplice as to some of the material facts tending to show that the accused was either identified with the perpetrator of the crime or had participated in the commission of the crime it-

self. *Mulcahy v. State,* 221 Md. 413, 158 A. 2d 80; *Wright v. State,* 219 Md. 643, 150 A. 2d 733. Here, the evidence offered below, independent of Dilda's testimony, clearly indicated the appellant's participation in the larceny of which he stands convicted and justified the lower court in submitting Dilda's testimony for the jury's consideration.

We find no merit in appellant's argument that the evidence can not support a finding of guilty of larceny since it requires a trespass in the taking of actual possession. Larceny is the fraudulent taking and carrying away of a thing without claim of right with the intention of converting it to a use other than that of the owner without his consent. *Fletcher v. State,* 231 Md. 190, 189 A. 2d 641; *Putinski v. State,* 223 Md. 1, 161 A. 2d 117. The two elements necessary to constitute the crime of larceny in addition to the felonious intent are a physical taking and asportation of the thing taken from the actual or constructive possession of the owner. Thus, in considering larceny by a finder of goods or estrays, if he appropriates the same with the felonious intent to permanently deprive the true owner of possession of the chattel, the finder is guilty of larceny. Further, stray domestic animals remain in the constructive possession of their owner, especially in those cases where the animals are known to be estrays by the appropriator. 52 C.J.S., *Larceny,* § 49; 32 Am. Jur., *Larceny,* §§ 63, 64. The evidence here shows that appellant, an experienced horse trainer, in his business dealings with Mrs. Sehnert had previous contacts with the ten horses which he appropriated. He knew these animals to be her property. The appropriation of these horses to his own use with the felonious intent to permanently deprive her of ownership thereof constituted larceny.

*Judgment affirmed.*