ROBERT CRAVEN CATES *v.* STATE OF MARYLAND

[No. 686, September Term, 1973.]

*Decided May 22, 1974.*

The cause was argued before POWERS, GILBERT and LOWE, JJ.

*Thomas V. Miller, Jr.*, for appellant.

*George A. Eichhorn, III, Assistant Attorney General*, with whom were *Francis B. Burch, Attorney General, Arthur A. Marshall, Jr., State's Attorney for Prince George's County*, and *Stephen C. Orenstein, Assistant State's Attorney for Prince George's County*, on the brief, for appellee.

GILBERT, J., delivered the opinion of the Court.

The basic question presented by this appeal is whether an individual who has lost money in a "crap game" and who, by the use of a weapon, takes the money from the person to whom it has been "lost", can be successfully prosecuted for robbery with a dangerous and deadly weapon.

Robert Craven Cates, appellant, much to his later chagrin, invited an Air Force sergeant to participate in a game of "craps". The sergeant testified "I gamble well. ... It is not a matter of how good you shoot dice. It is how you place your bets. ..." The sergeant was apparently a man of his word because he placed his bets well enough that within a short period of time he had won approximately five hundred dollars of the appellant's money. Two days after the obvious

mismatch, Cates, apparently ignorant of Md. Ann. Code Art. 27, § 243, *infra*, resorted to self-help. Armed with a pistol he entered the Guys and Dolls pool hall, backed the sergeant against the pool room wall, demanded the return of his money from the sergeant and took all of the money that the sergeant had, one hundred eighty dollars. Cates then "juped"[1] the sergeant and departed. The police arrested Cates shortly after the incident. He was convicted in the Circuit Court for Prince George's County, by Judge James H. Taylor, at a non-jury trial of robbery with a deadly weapon, assault and battery, carrying a hand gun and the use of a hand gun in the commission of a crime of violence. Cates received varying sentences all of which are to be served concurrently, and the total effect of which is that the appellant has been sentenced to be incarcerated for a period of five years.

In this Court the appellant contends:

(1) that the trial judge "erred in refusing to recognize the majority and growing body of law which holds that the element of felonious intent, essential in the crime of robbery, is lacking where one seeks the redemption of money lost by him at an illegal game."

(2) inasmuch as the appellant cannot be guilty of robbery, a crime of violence, he cannot be convicted of the use of a hand gun within the meaning of Md. Ann. Code Art. 27, § 36B (d).

(3) that the assault and battery charge merged with the armed robbery conviction.

## I.

Robbery is a crime in this State under the Common Law.[2] It has been defined as ". . . the felonious taking and

---

1. The victim defined the word "juped" to mean "jabbing, jabbing me with the pool cue."

2. Art. 5 of the Declaration of Rights provides in pertinent part "That the Inhabitants of Maryland are entitled to the Common Law of England, . . ., according to the course of that Law, and to the benefit of such of the English statutes as existed on the Fourth day of July, seventeen hundred and seventy-six. . . ."

carrying away of the personal property of another, from his person or in his presence, by violence, or by putting him in fear." *Clark and Marshall, A Treatise on the Law of Crimes* § 12.09 (6th ed. Wingersky rev. 1958). *Darby v. State*, 3 Md. App. 407, 239 A. 2d 584 (1968). *See also State v. Gover*, 267 Md. 602, 298 A. 2d 378 (1973), *aff'g Gover v. State*, 15 Md. App. 163, 289 A. 2d 601 (1972); *Phenious v. State*, 11 Md. App. 385, 274 A. 2d 658 (1971); *Williams v. State*, 7 Md. App. 683, 256 A. 2d 776 (1969); *Tyler v. State*, 5 Md. App. 158, 245 A. 2d 592 (1968). Robbery with a dangerous or deadly weapon is the offense of common law robbery aggravated by the use of a dangerous or deadly weapon and is not a new substantive crime. *Darby v. State, supra.*

In *State v. Gover, supra*, the Court of Appeals speaking through Judge Digges said, at 606:

"It is clear that there can be no robbery without a larcenous intent. *Midgett v. State*, 216 Md. 26, 139 A. 2d 209 (1958). Therefore, as larceny is an ingredient of robbery, we look to the components of the former to ascertain the requisite mental element of the latter. Larceny is the fraudulent taking and carrying away of a thing without claim of right with the *intention of converting it to a use other than that of the owner without his consent. Brown v. State*, 236 Md. 505, 204 A. 2d 532 (1964); *Fletcher v. State*, 231 Md. 190, 189 A. 2d 641 (1963); *Putinski v. State*, 223 Md. 1, 161 A. 2d 117 (1960). Because an intent to steal, the *animus furandi*, must be present, it follows that larceny, and therefore robbery, is classed as a specific intent crime. This is true not only in this [S]tate but also in the majority of our sister jurisdictions."

The holding in *Gover, supra*, makes it crystal clear that absent the *animus furandi* there cannot be a robbery, but whether the *animus furandi* exists is a question of fact for the trier of fact to determine.

2 *Wharton's Criminal Law and Procedure* § 551 (Anderson ed. 1957) states:

"In most jurisdictions, in accordance with the view that one cannot be guilty of robbery in forcibly taking his own property or property to the possession of which he honestly believes himself to be entitled, the courts have declared that it is not robbery for one who has lost money at gambling to compel by force or threats the return of the money lost, although the act may be punishable as an unlawful assault or trespass. This conclusion is based either on the theory that a loser has a right to recoup his gambling losses, and consequently, a forcible retaking thereof is without the requisite felonious intent, or that, since gambling is illegal,[3] title to the money won at gambling does not pass to the winner, and therefore the loser is merely an owner retaking his own specific property.

\* \* \*

When the right of the defendant to retake gambling losses is sustained it is immaterial that he does not retake the identical money which was won from him." (Footnotes omitted).

For the statement that a person may forcibly take property which is his own or to the possession of which he honestly believes himself to be entitled, 2 *Wharton, supra,* refers to § 565, wherein it is stated:

"If the defendant had the right to possession of the property at the time when he took it from his victim, he is not guilty of robbery even though he used force to obtain the possession. To illustrate, a person who by force recovers his stolen property from the thief who took it is not guilty of robbery. In such case, the defendant is not guilty of robbery for the additional reason that in taking his own

---

**3.** Gambling is proscribed in this State by Md. Ann. Code Art. 27, §§ 237-264C. Some of these sections permit certain counties, however, to allow carnivals, bingo and raffles under prescribed conditions.

property he did not possess the animus furandi essential to robbery.

It is likewise held that a person cannot be guilty of robbery in forcibly taking property from the person or presence of another if he does so under a bona fide belief that he is the owner of such property or is entitled to the possession thereof, since such belief negatives the requisite animus furandi or intent to steal. Such a taking, if an offense at all, is one of a different character. But as to property in addition to that taken under a belief of right, liability for robbery attaches."

Of interest also are Wharton's comments in § 563, where he says:

"The general rule is that it is essential, in order to constitute robbery, that the ownership and right of possession of the property taken be vested in some person or persons other than the taker. The owner of property may also be guilty of robbery when the right of possession is vested in another, since robbery is an aggravated form of larceny and larceny may be committed by the owner under such circumstances.

It is not necessary that the person from whom the property is taken be the owner thereof. It is sufficient that the victim had prior possession, without regard to whether he had title to or any interest or right in the property. The particular capacity in which he had possession or custody as representative of the owner is not material.

* * *

While the capacity of the victim is immaterial, it is essential that he have possession or custody, for by definition, goods cannot be taken from 'the person of another or in his presence' unless he has possession or custody of the goods. Since only the prior possession of the victim is required, the

defendant may be guilty of robbery even though the victim had himself stolen the property from another person or the money stolen was the proceeds from the sale of property which had been stolen."

We agree with Wharton's premise in § 551 that one cannot be guilty of robbery in forcibly taking his own property, but the conclusion stated does not follow that premise. Since one is entitled to use necessary force to take his own property, why should his act be punishable as an unlawful assault? No authority is given for the statement that because gambling is illegal, title to money won at gambling does not pass to the winner. Title to contraband, and to the money paid for the purchase of it, passes hundreds of times every day. The concluding statement in § 551 that it is immaterial that the defendant does not retake the identical money which was won from him is completely at odds with the statement that the loser, never having parted with title, still holds title.

We prefer Wharton's contrary statement, in § 563, that the capacity of the victim is immaterial, and that it is essential only that he have possession, without regard to whether he has title, and even though that possession resulted from stealing the property.

The phrase *claim of right* and the phrase *honestly believes himself to be entitled,* when applied to an intentional taking of property, must be given a limited and not a broad interpretation. They must be taken to require a legally recognizable right which can be successfully asserted in our courts. The *intent to steal,* the element of larceny which makes it and robbery specific intent crimes, must be evaluated objectively and not subjectively, and within the framework of rights and obligations given and imposed by the law.

Intent to steal was evaluated objectively and in the light of actual, not claimed, legal rights by the Court of Appeals in *Nichols v. State,* 231 Md. 383, 190 A. 2d 645 (1963). The Court affirmed appellant's conviction of larceny. Appellant had bought a used automobile from a dealer on a conditional sales contract, giving him the right to possession subject to

making the required weekly payments on the deferred purchase price. The day after the first weekly payment was due and unpaid, the seller repossessed the automobile. The appellant, within a few days, took the automobile back without the authority of the dealer, and stripped it. The appellant contended that the repossession by the dealer was unlawful, and relied upon a statute which required written notice of the amount due and the buyer's right to redeem, to be given within 5 days after repossession. The appellant had taken the automobile back before the expiration of 5 days. The Court of Appeals said, at 386:

> "The appellant cannot rely on the statute to justify his illegal taking. We think there was legally sufficient evidence to support the jury's finding that Nichols had lost any right to possession at the time he removed and stripped the car, and hence that he was guilty of larceny."

While it appears from the opinion that Nichols was a thoroughly unsavory character, the Court did not base its affirmance of the conviction on the right of the jury to disbelieve Nichols's claim of right, but upon its view of the law that Nichols actually had no legal right to possession of the car, regardless of his claim.

It is an ancient rule of law that parties to an illegal transaction can obtain no relief in the courts. In 38 C.J.S. *Gaming* § 29 (1943), it is said:

> "At present in substantially all jurisdictions gambling contracts are treated as unenforceable; and generally, in the absence of a statute providing for recovery or relief, the court will not, at law or in equity, see infra § 46, aid or assist either party to a gambling contract or transaction to enforce any right or claim against the other growing out of the contract or transaction, but will leave the parties where they have placed themselves and the court finds them." (Footnotes omitted).

If, in the absence of a statute, it is the public policy to deny to one who loses at gambling the help of the courts to

recover his losses, it could hardly be said that public policy would countenance such recovery by self help.

The statutory help in Maryland is found in Md. Ann. Code Art. 27, § 243 which provides:

> "Any person who may lose money at a gaming table may recover back the same as if it were a common debt, and shall be a competent witness to prove the sum he lost; but no person shall recover any money or other thing which he may have won by betting at any game or by betting in any manner whatsoever."

See Bender v. Arundel Arena, 248 Md. 181, 236 A. 2d 7 (1967); LaFontaine v. Wilson, 185 Md. 673, 45 A. 2d 729 (1946). The evident public policy expressed in this statute is not to help one who loses at gambling, but to discourage illegal gambling by putting the winner on notice that the courts will lend their aid to force him to disgorge his winnings. Such a notice would carry little effect if the courts turn the other way when the winner disgorges his winnings at gunpoint.

Moreover, we think it clear that the Maryland legislature by enactment of § 243, has statutorily determined that a gambling loss is ipso facto converted into "a common debt." This being so, the gambling loser is, by statute, made the creditor of the winner who in turn becomes the debtor.

A number of our sister States have adopted the view that one may resort to "self-help" in order to recoup gambling losses, and some States go so far as to hold that a creditor may by force of arms recover from his debtor that owed to the creditor without transgressing the criminal law.[4] We do

---

4. See e.g., People v. Rosen, 11 Cal. 2d 147, 78 P.2d 727, 116 A.L.R. 991 (1938); People v. Butler, 55 Cal. Rptr. 511, 421 P.2d 703 (1967); People v. Hughes, 11 Utah 100, 39 P. 492 (1895); Thompson v. Commonwealth, 13 Ky. L. Rptr. 916, 18 S.W. 1022 (1892); Gant v. State, 115 Ga. 205, 41 S.E. 698 (1902); State v. Price, 38 Idaho 149, 219 P. 1049, 35 A.L.R. 1458 (1923); People v. Henry, 202 Mich. 450, 168 N.W. 534 (1918); Davidson v. State, 200 Ark. 495, 139 S.W.2d 409 (1940); 77 C.J.S. Robbery § 7b (1952); 67 Am. Jur. 2d Robbery § 18 (1973); Annot., 35 A.L.R. 1461 (1925); Annot. 42 A.L.R. 741 (1926); Annot., 116 A.L.R. 997 (1938). See also People v. Gallegos, 130 Colo. 232, 274 P.2d 608, 46 A.L.R.2d 1224 (1954); Bauer v. State, 45 Ariz. 358,

not share those points of view. Imagine a situation, for example, where a finance company or bank is allowed to obtain payment from their debtor, not by judicial process, but by simply meeting the debtor on his payday when he exits his place of employment, and by the use of a weapon collecting the amount due from the debtor. We have no hesitancy in stating that in all probability debtors would commence carrying guns in order to resist their creditors. If we were persuaded by the reasoning employed in some of the other States then it is conceivable that those persons who engage in illegal gambling would also carry weapons so that they could recover their losses. Needless to say such occurrences could easily lead to the revival of the "Wild West", with an Eastern flavor — and turn our streets into "shoot-outs at the OK Corral." [5]

The Court of Appeals of Maryland has never held that a creditor or a party to an illegal transaction may take property from the possession of another merely because he believes or claims that he has a right to do so. Disputed rights between individuals must be resolved by agreement or by the courts; not by stealth or force.

The rulings of courts of other states are classified not as binding, but as persuasive authority. If the reasoning which supports them fails to persuade, they are no authority at all. The Michigan and Kentucky courts, n. 4 *supra*, based their rulings on statutes under which a winner at gambling acquires no title and no right to possession of his winnings. The Idaho court said that the winner has no right or title to money won at gambling. The California case of *People v. Rosen, supra,* involved recapture of gambling losses. At least one of the premises upon which it was decided was the statement by the court that it was the law in that State that

---

43 P.2d 203 (1935); Butts v. Commonwealth, 145 Va. 800, 133 S.E. 764 (1926); Johnson v. State, 24 Okla. Crim. 326, 218 P. 179 (1923); State v. Culpepper, 293 Mo. 249, 238 S.W. 801 (1922); State v. Brown, 104 Mo. 365, 16 S.W. 406 (1891); State v. Hollyway, 41 Iowa 200, 20 Am. R. 586 (1875). *Compare* Fisher v. State, 102 Tex. Crim. 229, 277 S.W. 386 (1925), wherein a distinction is drawn between gambling losses in a game fairly conducted as in one with fraud involved, it was held not to be robbery to recover by force money lost in a fraudulent game.

5. With apologies to Wyatt Earp.

in illegal games of chance the winner gains no title to the property at stake nor any right to possession thereof. The Arkansas court held that by statute title to money won at gambling passes to the winner after 90 days, but during that time the loser has the right to retake it. The Arizona court held that the claim of right was not made at the trial, and even if the "general rule" were conceded to be the law it was not applicable to the evidence. The Oklahoma case involved an owner who was recovering his own property which had been stolen. The Georgia case cited is a per curiam judgment of the court without opinion, although a syllabus by the court said that it was not error to instruct that it was not robbery for a loser at gambling to retake his losses by force.

The cited cases from Virginia, Missouri, Iowa and Colorado, n. 4 *supra,* indeed hold that an honest claim of a lawful debt, and the forcible taking, did not involve an intent to steal.

In the California case of *People v. Butler, supra,* the defendant was convicted of felony murder in a homicide which occurred during the course of an alleged robbery. In an opinion by Mr. Chief Justice Traynor for a 5 to 2 majority, the court reversed, and held that because of defendant's testimony that his sole intention was to collect a debt due him, it was error to permit the prosecutor to argue that if you think a man owes you money, and you go with a gun to try to get it, it is robbery.

The fact that many of the cases we have been considering were decided well over a half century ago, and most of them in States in the western part of the country, lends greater weight to the statements by Mr. Justice Mosk in his dissenting opinion in *People v. Butler, supra.* He said, in part:

> "Thus, the question is ultimately one of basic public policy, which unequivocally dictates that the proper forum for resolving debt disputes is a court of law; pursuant to legal process — not the street, at the business end of a lethal weapon.

\* \* \*

It is significant that the basic cases permitting forcible recaption of property one believes his own were decided before the turn of the century.

\* \* \*

In a bucolic western scene or in the wooly atmosphere of the frontier in the nineteenth century, the six-shooter may have been an acceptable device for do-it-yourself debt collection. If the law permitted a might-makes-right doctrine in that milieu, it is of dubious adaptability to urban society in this final third of the twentieth century."

The only case which squarely and undistinguishably supports the appellant in the case before us is *People v. Hughes, supra.* In a well written and well reasoned opinion the Utah court held that a defendant accused of robbery after he took money from a gaming table and the proprietor of the house by threatening to use a gun, should have been permitted to testify that it was his intent only to recover his losses, and was entitled to an instruction that if he acted under a *bona fide* impression and honest belief that the money was his own, he was not guilty of robbery, but what was good law in Utah 80 years ago is not necessarily good law in Maryland today.

We think that Md. Ann. Code Art. 27, § 243 was intended by the General Assembly of this State to be the sole remedy for the recovering of gambling losses, and one who undertakes to recover such losses through "force of arms" is guilty of robbery. In so holding we are not unmindful of the decisions of our sister States, n. 4 *supra*, relative to the rights of creditors to use force to recover their gambling losses or debts, but we decline to adopt their reasoning and to substitute in this State the "rule of the gun" for the "rule of reason."

II.

Appellant next argues that inasmuch as he cannot be guilty of robbery with a dangerous and deadly weapon he may not be convicted of the unlawful use of a handgun in the

commission of a crime of violence. Md. Ann. Code Art. 27, § 36B (d) provides in pertinent part:

"Any person who shall use a handgun in the commission of any felony or any crime of violence as defined in § 441 of this article, shall be guilty of a separate misdemeanor. . . ."

Md. Ann. Code Art. 27, § 441(e) provides:

"The term *crime of violence* means abduction; arson; burglary, including common-law and all statutory and storehouse forms of burglary offenses; escape; housebreaking; kidnapping; manslaughter, excepting involuntary manslaughter; mayhem; murder; rape; robbery; and sodomy; or an attempt to commit any of the aforesaid offenses; or assault with intent to commit any other offense punishable by imprisonment for more than one year."

Inasmuch as we have determined that the appellant was properly convicted of robbery with a dangerous and deadly weapon, his second contention must fall of its own weight.

### III.

Appellant also asserts that his assault by use of the pool cue upon his victim merged into the robbery conviction. We disagree. In the instant case, after completion of the robbery, the appellant "juped" the victim with the pool cue. That evidence is sufficient to sustain the assault and battery conviction.

*Judgments affirmed.*