773 A.2d 1087

**Kelly Lynn BRADSHAW**

**v.**

**STATE of Maryland.**

**No. 232, Sept. Term, 2000.**

Court of Special Appeals of Maryland.

June 6, 2001.

Julia Doyle Bernhardt, Asst. Public Defender (Stephen E. Harris, Public Defender on the brief), Baltimore, for appellant.

Rachel Marblestone Kamins, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore and Douglas Gansler, State's Atty. for Montgomery County, Rockville, on the brief), for appellee.

Argued before MURPHY, C.J., DEBORAH S. EYLER and PAUL E. ALPERT (Retired, Specially Assigned), JJ.

MURPHY, Chief Judge.

This appeal presents the question of whether the "interspousal immunity" defense applicable to a charge of theft is also applicable to charges of robbery, attempted robbery and/or conspiracy to commit robbery. In the Circuit Court for Montgomery County, a jury (Hon. S. Michael Pincus, presiding) convicted Kelly Lynn Bradshaw, appellant, of felony murder and related offenses. The State's evidence was sufficient to establish that, on or about September 29, 1998, appellant and one Darryl "Speedy" Butler (1) conspired to rob Olanipekun "Tony" Oyefusi, appellant's husband, and (2) murdered Mr. Oyefusi during their attempt to commit the robbery. In support of her argument that the interspousal

immunity defense is applicable, appellant presents two questions on that issue:

Whether the trial court erred in refusing to give a requested jury instruction that a wife cannot be convicted of stealing from her husband and, therefore, cannot be guilty of conspiracy to rob or attempted robbery of her husband nor his felony murder based on the felony of attempted robbery?

and, if the answer to this question is "yes,"

Whether the evidence was sufficient to support the convictions of felony murder, conspiracy to rob and attempted robbery with a dangerous and deadly weapon?

For the reasons that follow, we are persuaded that a defendant can be convicted of the *robbery* or *attempted robbery* of his or her spouse—whether either of those offenses is committed by the defendant alone or in concert with one or more accomplices. We shall therefore affirm the judgments of the circuit court.

## INTERSPOUSAL IMMUNITY

■ According to Professor Hochheimer's treatise on Crimes and Criminal Procedure,

[a] married woman can not incur the guilt of larceny by a taking of her husband's goods or chattels, [and] . . . [t]he husband cannot, at the common law, incur the guilt of larceny by a taking of his wife's goods or chattels.

Lewis Hochheimer, *The Law of Crimes and Criminal Procedure*, Sec. 368 at pp. 405–406 (2d ed., The Baltimore Book Company, 1904).

Although the crimes of "grand larceny" and "petty larceny" were abolished as of July 1, 1979, the date on which our theft statute took effect, the elements of larceny were retained in the crime of robbery until October 1, 2000.[1]

---

1. In the prosecution of a robbery that occurred prior to October 1, 2000, the State was required to prove that the defendant intended

"permanently to deprive the owner (or lawful possessor) of his [or her] property." *Hadder v. State,* 238 Md. 341, 355, 209 A.2d 70 (1965). As of now, however, Md. Ann.Code, art. 27, § 486 (2001) provides:

§ 486. Offense established

(a) Definitions.—

(1) In this subheading the following words have the meanings indicated.

(2) "Deprive" means to withhold property of another:

(i) Permanently;

(ii) For such a period as to appropriate a portion of its value;

(iii) With the purpose to restore it only upon payment of reward or other compensation; or

(iv) To dispose of the property and use or deal with the property so as to make it unlikely that the owner will recover it.

(3) "Obtain" means:

(i) In relation to property, to bring about a transfer of interest or possession, whether to the offender or to another; and

(ii) In relation to services, to secure the performance thereof.

(4) "Property" means anything of value, including:

(i) Real estate;

(ii) Money;

(iii) Commercial instruments;

(iv) Admission or transportation tickets;

(v) Written instruments representing or embodying rights concerning anything of value, or services, or anything otherwise of value to the owner;

(vi) Things growing on or affixed to, or found on land, or part of or affixed to any building;

(vii) Electricity, gas, and water;

(viii) Birds, animals, and fish which ordinarily are kept in a state of confinement;

(ix) Food and drink;

(x) Samples, cultures, microorganisms, specimens;

(xi) Records, recordings, documents, blueprints, drawings, maps, and whole or partial copies, descriptions, photographs, prototypes or models thereof; or any other articles, materials, devices, substances, and whole or partial copies, descriptions, photographs, prototypes, or models thereof which represent evidence, reflect or record secret scientific, technical, merchandising productions or management information, designed process, procedure, formula, invention, trade secret, or improvement; and

(xii) Financial instruments, information, electronically produced data, computer software and programs in either machine or human readable form, and other tangible or intangible items of value.

(5) "Service" includes:

(i) Labor or professional service;

(ii) Telecommunication, public utility, toll facilities, or transportation service;

(iii) Lodging, entertainment, or restaurant service; or

(iv) The use of equipment, including but not limited to computers and other data processing equipment.

(b) Proof of intent required; obtaining services of another by force.—

When our theft statute was enacted, the General Assembly decided to modify, rather than abolish, the interspousal immunity defense. Md. Ann.Code, art. 27, § 343(c) & (d)(2001) expressly provides that the following defenses and presumptions are applicable to cases in which a defendant is charged with theft:

(c) Good faith; property of spouse; trade secrets.—It is a defense to the offense of theft that:

(1) The defendant acted under a good faith claim of right to the property involved;

(2) The defendant acted in the honest belief that he had the right to obtain or exert control over the property as he did;

(3) The property involved was that of the defendant's spouse, unless the defendant and the defendant's spouse were not living together as man and wife and were living in separate abodes at the time of the alleged theft; or

(4) In cases of theft of a trade secret, that the defendant rightfully knew the trade secret or that it was available to him from a source other than the owner of the trade secret.

(d) Common law and evidentiary presumptions.—All common law and evidentiary presumptions applicable on July 1, 1979 to offenses which are consolidated under the provisions of this subheading are also applicable to the offense of theft, unless specifically repealed or modified by the provisions of this subheading, or unless modified by court decisions rendered after July 1, 1979.

Appellant's trial counsel moved for a judgment of acquittal on the charges of felony murder and attempted robbery,

---

(1) Robbery retains its judicially determined meaning, except that a robbery conviction requires proof of intent to deprive another of property; or

(2) Robbery includes obtaining the service of another by force or threat of force.

(c) Prohibition.—A person may not commit or attempt to commit a robbery.

(d) Violation; penalty.—A person who violates this section is guilty of a felony and on conviction is subject to imprisonment not exceeding 15 years.

arguing that appellant "could not, as a matter of law, commit the crime of larceny or attempted larceny against Mr. Oyefusi, her husband, on [the] date [of his death]." According to appellant, because it was "undisputed" that she and the victim were married, and because larceny or attempted larceny is an "essential element of attempted robbery," the "long standing doctrine of interspousal immunity" recognized in Maryland was applicable to the felony murder and related charges.

The prosecutor argued in response

that the public policy that supports this interspousal immunity is limited to theft. It doesn't extend further up the chain.

There is no immunity for robbery. There is no immunity for felony murder. It is much more limited ...

There is a much greater difference between a theft which has to do with some kind of ownership issues and robbery, which is a crime against person.

After quoting from *Parham v. State,* 79 Md.App. 152, 556 A.2d 280 (1989), in which this Court held "that the marital relationship does not preclude a conviction for burglary," *id.* at 161, 556 A.2d 280, the prosecutor added that

[t]here is no immunity for Mr. Butler, and therefore, you know, her liability is bootstrapped to Mr. Butler's, and she can't gain protection for what she assisted somebody else in doing, and the conspiratorial liability laws in this state would indicate she is liable for the actions that she aids, abets and acts that she takes in furtherance of the conspiracy that she has joined in here.

After considering the arguments of counsel, Judge Pincus ruled as follows:

[Under] 343(c)(3) ... it is a defense that the property involved was that of the defendant spouse, unless the parties were not living together as man and wife and were living in separate abodes at the time of the alleged theft.

The evidence with respect to the first prong, whether or not the parties were living together as man and wife, the

Court is prepared to find as a matter of law that he had kicked her out, that she was elsewhere for at least eight days.

Notwithstanding the fact that they had sex on the evening in question, the evidence is clear to the Court that they were not living together as man and wife.

The second prong, abodes, I am looking at the dictionary. Webster's College Dictionary defines abode as a place in which a person resides, a residence, a dwelling, a home.

Ms. Bradshaw was residing at various places, but I suppose particularly at the Webbs' for the longest period of time between the time she was kicked out and the day in question, September 29th.

The plain reading of the statute to the Court and the plain use of the words that the statute uses indicates to the Court that they were not living together as man and wife and they were in fact living in separate abodes.

Further, based on the Court's interpretation of the statute and research, that the statutory intent would restrict—mandates a restriction of the statutory application of the crime of theft and does not extend to crimes such as count 1, felony murder, based on the robbery felony, and count 2, attempted robbery with a dangerous and deadly weapon.

There is a case in Maryland, *Lusby versus Lusby*, at 283 Md. [334, 390 A.2d 77 (1978) ] which deals with whether interspousal immunity—the interspousal immunity doctrine protected a husband from being sued in a tort action by his wife for forcing her vehicle off the road and pointing a high-powered rifle at her, forcing her to enter his vehicle, and during this event he struck her, tore off her clothes and then forcibly and violently raped her against her will and aided two others in raping her as well.

The court in *Lusby* stated the following:

"We can conceive of no sound public policy in the latter half of the 20th Century which would prevent one spouse from recovering from another from the outrageous conduct here alleged.

"There certainly can be no domestic tranquility to be preserved in the face of allegations such as those we have before us. The court does not and cannot conceive of the statutory intent to extend the interspousal immunity to crimes such as those which are here involved." [*Id.* at 357, 390 A.2d 77].

Now—and I realize the stacking theory or the foundation upon which robbery would be built. Finally, clearly her liability is connected with that of Mr. Butler, and under those theories, as enunciated by the court, the Court will deny the motion.

Appellant's trial counsel thereafter noted a timely exception to Judge Pincus' refusal to give the following jury instruction:

You have heard evidence that Tony Oyefusi and Kelly Bradshaw were legally married. In order to prove that the defendant is guilty of attempted armed robbery and first degree felony murder, one of the elements that the State must prove beyond a reasonable doubt is that the defendant attempted to commit the crime of theft. It is a defense to the crime of theft and, therefore, to the crimes of attempted armed robbery and first degree felony murder that the property involved was that of the defendant spouse, Mr. Oyefusi, unless the parties were not living together as man and wife or were living in separate abodes at the time of the alleged attempted theft.

You are required to find that the defendant is not guilty of attempted armed robbery and first degree felony murder of if either of the following factors are present:

One, the parties were living together as man and wife, or two, the parties were not living in separate abodes at the time of the alleged theft.

Living together as man and wife requires that the parties engage in sexual intercourse. An abode is a person's home, habitation or domicile.

In order to convict the defendant of attempted armed robbery and first degree felony murder, the State must show that the defense of interspousal immunity does not

apply in this case by proving beyond a reasonable doubt that both of the two factors previously stated were absent.

We agree with Judge Pincus that appellant was not entitled to either a judgment of acquittal or an "interspousal defense" instruction pursuant to Article 27, Sec. 343(c)(3). Our holding is consistent with *Parham, Lusby,* and *Jupiter v. State,* 328 Md. 635, 616 A.2d 412 (1992), in which the Court of Appeals rejected the contention that a man who used force to obtain beer from a licensed seller could not be convicted of robbery because he made full payment to the seller when the seller handed over the beer. *Id.* at 645–646, 616 A.2d 412. Our holding is also consistent with *Cates v. State,* 21 Md.App. 363, 320 A.2d 75 (1974) in which we held that, even though Mr. Cates was entitled by statute to recover his gambling losses, he was guilty of robbery for recovering those losses through "force of arms." *Id.* at 374, 320 A.2d 75. Whether acting alone or in concert with another person, a spouse who attempts to rob his or her spouse can be convicted of attempted robbery, and—if the victim-spouse is killed during the attempted robbery—of felony murder as well.[2]

## ARGUMENTS FOR REMAND

Appellant argues in the alternative that, even if she was not entitled to a judgment of acquittal, she is entitled to a new trial because:

I.    THE TRIAL COURT ERRED IN EXCLUDING THE TESTIMONY OF AN EXPERT WITNESS CONSULTED BY THE DEFENSE.

II.    THE TRIAL COURT ERRED IN ADMITTING TESTIMONY RELATING TO A WRITTEN POEM OR RAP SONG WHICH HAD BEEN OBSERVED BY STATE'S WITNESSES.

---

**2.** The General Assembly certainly could have—but wisely chose not to—include the crime of robbery along with the crime of theft in the "interspousal" defense provided for by Article 27, Sec. 343(c)(3).

## III. THE TRIAL COURT ERRED IN REFUSING TO GIVE A MISSING WITNESS INSTRUCTION.

There is no merit in any of these arguments.

### Exclusion of Expert Testimony

Appellant's trial began on October 12, 1999. In a September 24, 1999 letter to the prosecutor, appellant's trial counsel stated that the defense expected to call Dr. John Davis to testify regarding the effects of "alcohol, alcoholism, and the effects of alcohol on our client, based on our client's history and the amount of alcohol she drank on the day of the alleged crimes." Dr. Davis interviewed appellant on October 1, 1999. On October 5, 1999, appellant's trial counsel received a one page report from Dr. Davis and immediately faxed a copy to the prosecutor. The State moved *in limine* for an order prohibiting Dr. Davis' testimony, and Judge Pincus granted that motion on the first day of trial, expressly stating that the defense had "the right to ask me to reconsider [this ruling]."

On October 19, 1999, the sixth day of trial, the State requested that Judge Pincus vacate the order excluding Dr. Davis' testimony. Judge Pincus declared a recess so that appellant's trial counsel could attempt to contact Dr. Davis, who had told appellant's trial counsel that he would be "out of town October 20th and 21st ... testifying in another state." After the recess, appellant's trial counsel stated, "[A]t this point, I can't get him, Judge."

■ According to appellant, the State's objections to Dr. Davis' testimony "resulted from gamesmanship rather than prejudice," and the State's decision to withdraw its opposition to that testimony caused "a tremendous disadvantage" to the defense. We disagree. During the *in limine* hearing, Judge Pincus asked appellant's trial counsel the following questions:

[H]ow do you respond to the complaint by the State that they have not had a chance to consult with and retain their own expert to rebut [Dr. Davis'] testimony?

* * *

How can they talk to a doctor and say, listen doctor, this is what the defense is going to say? What is your opinion? When they have not even received a report and do not until the 5th of October . . ., which is less than a week away from this trial?

Judge Pincus did not receive a satisfactory answer to either of those questions. He explained to appellant's trial counsel that

the defense's decision to sit on their hands, so to speak, at this point, is good enough to convince me to deny [a] motion [to permit Dr. Davis' testimony].

█ Even if Dr. Davis had been permitted to testify, he could not have testified to what appellant told him when he interviewed her, because appellant's hearsay statement is simply not "of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject." Md. Rule 5–703(a); *Hartless v. State,* 327 Md. 558, 581, 611 A.2d 581 (1992); *Waltermeyer v. State,* 60 Md.App. 69, 80, 480 A.2d 831 (1984). We are persuaded that Judge Pincus neither erred nor abused his discretion in granting the motion to exclude the testimony of Dr. Davis.[3]

### Testimony about a Written Poem or Rap Song

█ The State called James Webb to testify that, during the evening of September 29, 1998, he saw appellant and Butler "writing stuff down" in a notebook that they passed "back and forth to each other." At one point, Butler entered the Webb residence to use the bathroom. Later, when Mr. Webb entered the bathroom, he saw a sheet of notebook paper containing the words, "cut the motherfucker, something about duct tape and a baseball bat or a bat." Mr. Webb showed this paper to his wife, who also testified to the contents of the writing, which had disappeared. Mrs. Webb stated "positively" that appellant's handwriting was not on this paper.

---

**3.** Appellant's trial counsel never did proffer what opinions Dr. Davis would express as a result of the evidence presented to the jury.

Appellant's "authentication" and "hearsay" objections to the testimony about this evidence are answered by Md. Rules 5–901(b)(4), 5–1004(a) and (b), and 5–803(a)(5), as well as by *Gray v. State,* 53 Md.App. 699, 456 A.2d 1290 (1983) and *Gerald v. State,* 137 Md.App. 295, 305, 768 A.2d 140 (2001). The State's evidence was sufficient to establish that Mr. Webb observed a document that "was authored [by appellant's co-conspirator] ... in furtherance of the exclusive object of the conspiracy." *Gray, supra,* 53 Md.App. at 716, 456 A.2d 1290.

### Missing Witness Instruction

Appellant's question of "[w]hether the trial court erred in refusing to give a missing witness instruction" is answered by *Patterson v. State,* 356 Md. 677, 741 A.2d 1119 (1999), in which the Court of Appeals held that a party entitled to make a "missing evidence" argument is "not entitled to such an instruction." *Id.* at 689, 741 A.2d 1119.

**JUDGMENTS AFFIRMED; APPELLANT TO PAY THE COSTS.**