## MASON vs. THE STATE.

LARCENY: *Felonious intent necessary; presumptions, etc.*
 A felonious intent is an essential constituent of larceny; it is as necessary
  to be averred and proven as the taking and carrying away; the mere fact
  of the taking does not raise a presumption of guilt, or that it was to steal;
  the felonious intent must be shown by circumstances connected with the
  taking; the law presumes in favor of innocence, and the burden of prov-
  ing the criminal intent is on the State.

APPEAL from *Washington* Circuit Court.
Hon. J. M. PITTMAN Circuit Judge.
*Attorney General* for the State.

HARRISON, J.:

Brier Mason the appellant, and Mid Jones and Riley Beavers, were indicted for larceny in breaking and entering the house of Nathan Dixon, and also for grand larceny in stealing therefrom a keg of beer, the property of said Dixon.

The appellant was separately tried, and acquitted of the charge of burglary, but convicted on the second count, of petit larceny.

He filed a motion for a new trial upon the ground that the evidence did not sustain the verdict, which was refused.

Nathan Dixon, a colored man, the only witness for the State, testified, that on the second Saturday in April, 1876, the defendant, and the said Jones and Beavers, came to his house in Cincinnati, in Washington County, after eleven o'clock at night, and called for some beer. He had then gone to bed, and refused to get up and let them have it. They insisted, and told him if he did not let them have it they would steal all he had. He did not get up and they left. The witness was sleeping in the house in which he kept his beer for sale. The next morning he discovered that a window of the room in which he kept the beer had been prized up, and a keg of beer which set on the opposite

side of the room, had been taken out, and was setting by the window on the porch, and about a gallon of the beer, worth about 30 cents, had been taken.　He suspected the defendant and Jones and Beavers of the act but said nothing about it that day to any one except Mr. Scoy, a justice of the peace, who lived about two miles from town ; Mr. Scoy told him it was a grand jury case.　On the following Monday morning and before he had mentioned the matter to any other person, the defendant and Jones and Beavers came to him, and told him that they had taken the beer, and offered to pay him for it.　They offered $3, which he refused to received, but offered to take $30, and give them a full receipt against the grand jury.　They refused to pay $30.

The witness had been selling cakes; and beer and cider as a business in Cincinnati ten years, and had been long intimately acquainted with all the said parties, and had known the defendant, who was raised there since he was ten years old, and from the time the witness came there and engaged in said business. That all had been, for years, customers of his, and the defendant ever since he commenced selling cakes, and beer and cider, and that he lived about a hundred yards from him, and Jones near by.

A felonious or criminal intent, is an essential constituent of larceny.　It must always be averred in the charge, and is as necessary to be proven as the taking and carrying away.　Proof of one without the other will not suffice.

The mere fact of the taking and carrying away, does not raise a presumption of guilt, or that the taking was to steal, or *lucri causa*, for the sake of profit or gain; but such felonious or criminal intent must be shown by circumstances connected with the taking.　1 Lead. Cr. Cases, 354 ; 1 Green. Ev., sces. 33-35-87*b* ; 2 Ib., sec. 157 ; 2 Whar. Cr. Law, sec. 1769 ; *Commonwealth* v. *McKie*, 1 Gray, 61 ; *Smith* v. *Shultz*, 1 Scam. (2 Ill.,) 490 ; *State* v. *Gresser*, 19 Mo., 247.

Webster defines profit to be : 1. acquisition beyond expenditure ; excess of value received for keeping or selling over cost: emolument. 2. Accession of good ; valuable results ; useful consequences; benefit; avail and gain; as that which is gained, obtained or acquired, as profit or advantage : profits ; benefits ; winning ; opposed to loss.

The beer was taken on Saturday night; on Monday morning, before any complaint was made, the parties went to the owner and told him they had taken the beer, and offered to pay him for it. No one had seen them take it; it was not found in their possession, and the fact that they took it was known only to themselves. Dixon kept beer for sale ; they applied to him as they had often before done for some ; they had been his customers for years ; the defendant for ten years ever since he was ten years old ; and he was intimately acquainted with all of them ; there is no proof that they did not intend to pay for it, and the only reason for not letting them have it, so far as the evidence discloses any, was that he had retired to bed, and did not wish to get up.

Where is the evidence of a design to fraudulently deprive Dixon of his property, or of an intention to take it without giving him a *quid pro quo* of equal value? If they intended to pay for the beer, how did they intend to defraud him, or what gain to themselves did they contemplate?

The law presumes in favor of innocence, and of a good motive rather than a bad one, and the burden was not upon the defendant to show that he had no criminal intent in taking the beer, but it devolved upon the State to prove that he had.

The presumption in favor of an innocent intent was not encountered, that we can see, by the slightest proof, nor the act of the parties.

The judgment of the court below is reversed and the cause remanded to it, that the appellant may have a new trial.