[Crim. No. 16221. Second Dist., Div. Five. Feb. 24, 1970.]

THE PEOPLE, Plaintiff and Respondent, v.
ARCHIE JASO, JR., Defendant and Appellant.

COUNSEL

Richard H. Levin, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Michael L. Abrams, Deputy Attorney General, for Plaintiff and Respondent.

OPINION

**STEPHENS, J.**—Defendant was charged by information with violation of Penal Code sections 242 and 243 (battery on a peace officer) in count I, and with violation of Penal Code section 666 (petty theft with a prior conviction of petty theft) in count II. In an amendment to the information, defendant was charged with having been previously convicted of forgery (Pen. Code, § 470) and possession of narcotics (Health & Saf. Code, § 11500). Defendant personally pled not guilty and denied the priors.

In a jury trial, defendant admitted the allegation of a prior conviction of petty theft. Defendant was found not guilty of count I and guilty of count II. The prior convictions of violation of Penal Code section 470 and Health and Safety Code section 11500 were found to be true. Defendant's pro. per. motion for new trial, based in part upon alleged incompetence of the public defender, and his motion for probation were denied. He was sentenced to state prison for the term prescribed by law, the sentence to run concurrently with any other sentence defendant was then serving. He appeals from the judgment.

Police Officer James Merritt is a detective in the Los Angeles Police Department. He testified that he was also employed as a night security man for the Sears, Roebuck & Company store located at 2650 East Olympic Boulevard in Los Angeles. On June 13, 1968, Officer Merritt was working in his capacity as a security officer for Sears, and was stationed in a store lot, where an outside sale was being conducted by Sears. Officer Merritt was dressed in civilian clothes. At approximately 6 p.m., he observed defendant shopping in the women's clothing section of the outside-sale area. Defendant was carrying a gray Sears shopping bag. Officer Merritt observed him for a period of approximately 25 minutes. Defendant walked to a display or dress rack, and separated clothing on each side of a blue dress. While holding the shopping bag in his left hand, defendant slipped the blue dress from a hanger into the bag with his right hand. He then closed the top of the bag, stepped back toward an outside shed that housed the cash registers, and leaned against the counter that surrounded the shed. He stayed there for approximately 30 seconds to a minute and looked in the direction of the cash register nearest the parking lot. Then he looked in the opposite direction, and proceeded to walk directly eastward, toward the parking lot.

Officer Merritt followed defendant, and caught up with him approximately 30 to 40 feet from where he had first seen him. He approached defendant from the rear, and said, "Hold it a minute." Defendant did not respond, and Officer Merritt repeated his command several times. Approximately two feet separated Officer Merritt from defendant at this time. Officer Merritt removed his badge from his pocket, and said "I am a security officer. You are under arrest." Defendant gave him a "blank look," and Officer Merritt added, "Also, I am a police officer." He displayed his badge at shoulder height. Defendant looked in the direction of Officer Merritt and the displayed badge, but did not stop or turn to face him. Officer Merritt grabbed defendant's left wrist, and defendant said something to the effect that his wrist was or had been broken and "Wait, turn loose of my wrist." Officer Merritt released defendant's wrist and placed his right hand on defendant's sweater, at the shoulder level. Defendant then made an

"upward jerking motion" with his elbows, and one or both connected with Officer Merritt's jaw. The officer's teeth came together and "two to four" of his front teeth were chipped. Defendant wrenched away from him, and ran between the parked cars. He ran approximately 15 to 20 feet before the officer caught up with him. After a struggle, the officer subdued defendant and placed handcuffs on him.

Officer Merritt retrieved the shopping bag which defendant had been carrying. He found four articles of women's clothing in it, one of which was the blue dress which he had seen defendant remove from the rack. Officer Merritt could not find a sales slip in the bag. The other three articles were: a blue evening dress, with a Sears price-tag of $9 on it; a women's garment of aqua, blue and white, with a price-tag of $9; and an off-white blouse, with a Sears label reading "Made in England, Especially for Sears." Officer Merritt testified at the trial that Sears' practice was to remove the price-tag when an item is paid for, and give the purchaser a sales slip in return.

Defendant testified that he went to Sears to buy a dress. After he made a purchase with cash, he returned to the clothing rack to look for more garments. He saw a brown three-piece suit he wished to purchase. Since he was wearing tight "Levis," he had left his wallet in the glove compartment of his car. He only took enough money to make the first purchase. Therefore, he put the three-piece suit in the bag, together with his first purchase, a green dress, and walked toward his car to get enough money to pay for it. He said that he was going to tell Officer Merritt that he was going to get his wallet, but the officer kept twisting his arm, which had been injured in a previous fall off of a building. He tried to get away because he was afraid of being hurt. Defendant denied attempting to strike the officer.

Defendant contends that the evidence is insufficient to support the judgment. This contention is without merit. While defendant was free to argue that he was just going to his car to get some more money, the jury was equally free to disbelieve him.  ■  On appeal, the test is not whether the evidence may be reconciled with innocence, but whether there is substantial evidence in the record on appeal to warrant the inference of guilt drawn by the trier below. (*People* v. *Saterfield,* 65 Cal.2d 752, 759 [56 Cal.Rptr. 338, 423 P.2d 266].)

■  Defendant also argues that the court failed to adequately instruct the jury on the requisite intent to commit the crime of theft. The court gave the following instructions on the elements of theft:

"Every person who feloniously steals, takes, carries, leads or drives away the personal property of another is guilty of theft by larceny." (CALJIC Instruction #220.)

"In a crime such as that of which defendant is charged in Count . . . of the information there must exist a union or joint operation of act or conduct and a certain specific intent.

"In the crime of [theft], there must exist in the mind of the perpetrator the specific intent to [take the property of another], and unless such intent so exists that crime is not committed." (CALJIC Instruction #71.11.)

"The specific intent with which an act is done may be manifested by the circumstances surrounding its commission. But you may not find the defendant guilty of the offense charged in Count [II] unless the proved circumstances not only are consistent with the hypothesis that he had the specific intent to [take the property of another] but are irreconcilable with any other rational conclusion." (CALJIC Instruction #27-A.)

There is no doubt that defendant "took" the article. And he probably was not authorized to carry it toward his car without paying for it. But he would have committed no crime unless it was his intent to keep it and not to pay for it. Yet there was no instruction that to be guilty of theft the defendant had to intend to keep the article; i.e., to permanently deprive Sears of it. Nor was there any instruction that the defendant would be guilty of theft only if he did not intend to pay for the article. It is unfortunate that the court did not complete its obligation to fully instruct the jury, which it would have done had CALJIC Instruction #222 been given ("To constitute theft by larceny there must exist in the mind of the perpetrator, at the time of the taking of the property, the specific intent to permanently deprive the owner of his property").

Under the jury instructions actually given, the jury might have believed that defendant had committed theft merely because he took and carried away the article without permission, irrespective of whether he intended to keep it, and irrespective of whether he intended to pay for it.

■ Theft requires a specific intent to permanently deprive the owner of his property. (Pen. Code, § 484; *People* v. *Farmer,* 47 Cal.2d 479, 482 [304 P.2d 713]; 1 Witkin, Cal. Crimes (1963) §§ 376, 378-385; Fricke-Alacron, Cal. Criminal Law (9th ed.) pp. 279-283.) That such an intent is required appears nowhere in the jury instructions. That the intent to permanently deprive an owner of his property is a necessary requisite of the crime of theft cannot be doubted. Therefore, the court had the duty to instruct the jury regarding this subject, even in the absence of a specific request by defense counsel. (*People* v. *Wade,* 53 Cal.2d 322, 334 [1 Cal. Rptr. 683, 348 P.2d 116]; Witkin, Cal. Criminal Procedure (1954) § 471.)

■ The evidence that defendant intended to keep and not pay for the

article was purely circumstantial. It was contradicted by defendant's direct testimony concerning his intent. Thus, the question of defendant's guilt hinged upon the finding of the specific intent upon which there was a failure to instruct.[1] "The failure to give such an instruction deprived defendant . . . of his 'constitutional right to have the jury determine every material issue presented by the evidence,' and requires a reversal [of his conviction]. (*People* v. *Modesto, supra,* 59 Cal.2d at p. 730.)" (*People* v. *Graham,* 71 Cal.2d 303, 310 [78 Cal.Rptr. 217, 455 P.2d 153].)

Though other contentions are made by defendant on appeal, under the result we necessarily reach they need not be discussed, since they may not arise upon retrial.

The judgment is reversed.

Kaus, P. J., and Aiso, J., concurred.

---

[1]We note that new CALJIC instructions have been prepared by the Committee on Standard Jury Instructions covering the instant problem. (CALJIC Instructions #14.02 and #14.03.) Though they are not as yet published in the bound volume, they are available and being used in the criminal courts in Los Angeles County. CALJIC #14.02 reads:

"Every person who steals, takes, carries, leads or drives away the personal property of another with the specific intent to deprive the owner permanently of his property is guilty of theft by larceny."

CALJIC # 14.03 reads:

"The two elements necessary to constitute theft by larceny are:

"First, at the time of the taking of the property, there must exist in the mind of the perpetrator the specific intent to deprive the owner permanently of his property having some value; and

"Second, a carrying away of such property.

"In order to constitute a carrying away, the property need not be retained in the possession of the perpetrator, nor need it be actually removed from the premises of the owner. Any removal of the property from the place where it was kept or placed by the owner, done with the specific intent described, whereby the perpetrator obtains possession and control of the property for any period of time, is sufficient to constitute the element of carrying away."