616 A.2d 412

John Mitchell JUPITER

v.

STATE of Maryland.

No. 101, Sept. Term, 1991.

Court of Appeals of Maryland.

Dec. 11, 1992.

Gary S. Offutt, Asst. Public Defender (Stephen E. Harris, Public Defender, both on brief), Baltimore, for petitioner.

Diane E. Keller, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., both on brief), Baltimore, for respondent.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, McAULIFFE, CHASANOW, KARWACKI and ROBERT M. BELL, JJ.

RODOWSKY, Judge.

■ At issue here is whether forcibly taking from a licensed seller of alcoholic beverages beer that the seller intended to sell to legally eligible members of the public constitutes robbery where full payment is made.

After a day's duck hunting, and after helping three friends drink two and one-half cases of beer, the Petitioner, John Mitchell Jupiter (Jupiter), went to Captain John's Crab House and Marina and asked to purchase a six-pack of beer. Warren Yates (Yates), the owner of Captain John's, refused to do so. Yates told Jupiter that he was refused service because he was intoxicated. Jupiter then asked if Yates would sell him a single beer, and Yates again refused. Jupiter went to his vehicle parked outside and then reentered Captain John's carrying a shotgun. It was later determined that there was one shell in the chamber. Jupiter placed the shotgun on the counter, pointed it at Yates, and asked, "Are you going to sell it to me now?" Yates said, "Yes, sir," and produced a six-pack of Budweiser from a cooler behind the counter.[1] Jupiter put a twenty dollar

---

1. Jupiter's testimony was that he became concerned that his shotgun would be stolen, left Captain John's to retrieve the weapon, and returned with it, but that he made no threats.

bill on the counter. Yates took the bill and gave Jupiter sixteen dollars change. An employee of Captain John's telephoned the police.

Jupiter drove away but was promptly stopped and arrested by the police for suspicion of driving under the influence of alcohol and because his vehicle met the description the employee had given.

A jury in the Circuit Court for Charles County found Jupiter guilty of robbery with a deadly weapon, robbery, assault, and driving under the influence of alcohol. The court sentenced Jupiter to ten years on the first charge, merged the second and third charges, and imposed a concurrent sixty day sentence on the fourth charge. The Court of Special Appeals affirmed in an unreported opinion. We granted certiorari to determine if the State proved robbery.

In submitting that his conduct was not robbery, Jupiter relies entirely on *The Fisherman's Case*, decided in sixteenth-century England, and on some widely scattered commentary about that case. The earliest reference to *The Fisherman's Case* that Jupiter presents is from M. Dalton, *The Country Justice* 364 (1690).[2] The accused met a fisherman who was going to market with some fish to sell. The fisherman refused to sell fish to the defendant,

> "whereupon the other took away some of the Fishermans Fishes against his will, and gave him more Mony for them than they were worth; but the Fisherman was thereby put in fear: Whereupon the other was indicted.... But

---

**2.** *The Fisherman's Case* was decided circa 1584, some thirty-five years before Dalton's first brief report of the case in 1619. *See* M. Dalton, *The Country Justice* 235 (1619). Petitioner notes that Dalton cited to a book by "Crompton," published in 1606, which Dalton called *"Justice of Peace."* Dalton probably was referring to Richard Crompton's 1606 edition of Sir Anthony Fitzherbert's *Loffice et Auctoritie de Iustices de Peace* (London 1617). Crompton's report, possibly the only one recorded by a contemporary of the judge in the case, is not reproduced here because it is written in Law French. *Id.* at 35. For other early reports of *The Fisherman's Case*, none of which is substantially different from Dalton's version, see 2 E. East, *Pleas of the Crown* 661–62 (1806); 1 W. Hawkins, *Pleas of the Crown* 98 (4th ed. 1762).

Judgment was respited, for that the Court doubted whether it were Felony or no."

There has been a longstanding difference of opinion as to the holding in this case.

Blackstone and a few other early English commentators refer to *The Fisherman's Case* for the proposition that one who forces a sale of goods intended for sale is not guilty of robbery. 4 W. Blackstone, *Commentaries on the Laws of England* 242 (1769); see Dalton, *supra*, at 345 (1746). At least one modern commentator has indicated agreement with this reading of the case.

"It is robbery, it may be added, forcibly to extort money under pretense of a sale, even if some unwanted thing is handed over in exchange. For the same reason it is robbery to require one, at gunpoint, to 'sell' a chattel not held for sale even if payment is made at the time. Some early statements went to the extent of holding it robbery where a merchant is compelled by force to sell to one with whom he prefers not to deal, although the property is held for sale and he receives the full price,— but this seems not to be the law."

R. Perkins & R. Boyce, *Criminal Law* 345 (3d ed. 1982) (footnote omitted) (Perkins).

The drafters of the Model Penal Code refer to the principle of the " 'famous' " *Fisherman's Case* as the "prevailing American law." Model Penal Code § 223.1 commentary at 158 (1980). The facts in the cases cited in support, however, are not quite the same as those in *The Fisherman's Case.*

Other commentators, however, have criticized the case, and several conclude that *The Fisherman's Case* stands for the proposition that its facts present a question of fact as to the defendant's intent. *See 2 Russell on Crime* 963–64 (Turner 11th ed. 1958); 2 E. East, *Pleas of the Crown* 661–62 (1806); *see also Pyles v. State,* 62 Tex.Crim. 49, 136 S.W. 464, 464–65 (1911).

Jupiter contends that *The Fisherman's Case* established a common law principle that has never been altered, and

that the case is controlling authority here. *See* Md. Const. Decl. of Rts. art. 5. He argues that the facts of *The Fisherman's Case* portray the lack, as a matter of law, of the mens rea necessary to support common law larceny or robbery. In *West v. State*, 312 Md. 197, 202, 539 A.2d 231, 233 (1988), we described robbery as "the felonious taking and carrying away of the personal property of another, from his person or in his presence, by violence or putting in fear...." "The word 'felonious' when used in connection with the taking of property means a taking with the intent to steal." *Williams v. State*, 302 Md. 787, 792–93, 490 A.2d 1277, 1280 (1985). Thus, Jupiter argues that as a matter of law the evidence was insufficient to prove that he had an intent to steal.

Even if we assume that *The Fisherman's Case* was decided as a matter of law, the facts here do not present *The Fisherman's Case*. Whatever the vitality of that 400 year old decision, the facts of this case are different. It was not because of the "[p]erverseness of his [h]umour" that Yates refused to sell beer to Jupiter. W. Hawkins, *Pleas of the Crown* 97 (4th ed. 1762). Yates was prohibited by law from selling to intoxicated persons. Md. Code (1957, 1990 Repl.Vol.), Art. 2B, § 118(a)(1)(ii). There is evidence that Jupiter was, in the words of the statute, "visibly under the influence" of alcohol. Yates told Jupiter that he could not sell him beer, and he told him why. Hence the evidence clearly was sufficient to support jury findings that Jupiter knew that he did not have a right to purchase beer, that he intended to take it in any event, and that he took it away with the intent permanently to deprive the owner of it. Ordinarily those findings sufficiently support an ultimate finding of an intent to steal.

For Jupiter to derive a complete defense from *The Fisherman's Case* requires a more particularized analysis than merely asserting that one who forces a seller of goods to sell them at their price cannot have the mens rea for robbery. Consistent with the sketchy report of *The Fisherman's Case* are two analyses under which the accused

might not have been guilty of robbery as a matter of law. The first is the lack of intent to deprive the victim of any value. The second is that paying for the goods conclusively establishes a good faith claim of right to the goods. Neither argument applies under the facts of this case.

## I

■ A theft must have as its object something of value. Quantifying the value is not important to whether a theft was committed. Nevertheless, it is essential that the thing taken have *some* value. *See* Md. Code (1957, 1992 Repl. Vol.), Art. 27, § 340(h); *Fisher v. Warden of Maryland House of Correction*, 224 Md. 669, 670, 168 A.2d 520, 521 (1961); *Stackowitz v. State*, 68 Md.App. 368, 372–73, 511 A.2d 1105, 1107, *cert. denied*, 307 Md. 599, 516 A.2d 569 (1986); 3 C. Torcia, *Wharton's Criminal Law* § 384, at 374 (14th ed. 1981).

Even though we review the facts favorably to the State, the evidence nevertheless strongly suggests that, at all relevant times, Jupiter intended to pay for the beer. Hence Jupiter's more particularized argument would be that, because the seller's purpose in holding the beer was to sell it for four dollars, and because Jupiter paid four dollars for the beer, Jupiter did not deprive the seller of value.

This argument is not, however, consistent with the value requirement in common law larceny. The requirement merely ensures that the defendant's conduct constitutes a crime against property. The value requirement is rarely an issue and it is difficult to hypothesize an illustration of when it might be an issue. If, for instance, a person asks another for the time of day, and the other refuses, but the person who inquired learns the time by glancing at the other's watch, the one who looked at the watch has not committed theft because that person did not take property of value. If an accused held a gun to a victim's head to force the victim to divulge the time, arguably the accused did not commit *robbery*, for the same reason.

Decisions in analogous cases show that there is no requirement that the defendant deprive the victim of value; the requirement is simply that the defendant deprive the victim of possession of property of value. For instance, the parties and the authorities agree that it is robbery to force a nonmerchant to sell an item that is not for sale, even though the robber intends to pay, and does pay, full value or more for the item. *See* Perkins, *supra*, at 345. Likewise, one can be guilty of larceny of property which is not legally subject to ownership by the possessor. *Burgess v. State*, 161 Md. 162, 167–68, 155 A. 153, 155 (1931) (defendants could be guilty of stealing contraband whisky notwithstanding that federal law at the time provided that " 'no property rights shall exist' in liquor illegally possessed"). Moreover, this Court long ago decided that the felonious intent in larceny does not require that the defendant intend to achieve *pecuniary* gain. *Canton Nat'l Bank v. American Bonding & Trust Co.*, 111 Md. 41, 44–45, 73 A. 684, 685 (1909).

Jupiter also argues that the fact that he never intended to deprive Yates of value indicates that he did not have the necessary "intent to steal." Virtually the same argument arises under the "claim of right" defense, which we discuss *infra*, Part II. To the extent that the argument is separable from claim of right, it has no merit. That "intent to steal" does not mean an intent to deprive the possessor of value follows from the demise of the old view that *lucri causa* is an element of intent in larceny. Older English authorities sometimes said that *"lucri causa,"* defined as "for the sake of gain," or "the intent to derive a profit from the crime," was essential to larceny. Indeed, one early English commentator explained *The Fisherman's Case* on that basis: "[T]he previous offer to purchase, and the subsequent payment of *more* than the value of the thing taken, seem to show clearly, that there was no *felonious* intent; there being no *lucri causa*, which is a main ingredient in every case of larceny or robbery." E. Deacon, *A Digest of the Criminal Law of England* 1130 (London

1831); *see also* 4 Blackstone, *supra,* at 232; W. Russell, *Crimes and Indictable Misdemeanors* 93–94 (4th Am. ed. 1841).

Whether there was a consensus on the meaning or necessity of *lucri causa* among the pre-Revolution authorities is unnecessary for us to decide. Certainly any necessity for *lucri causa* in larceny was seriously questioned by at least the early nineteenth century. For instance, in 1834 a group of law commissioners seeking to codify the English criminal law had considerable difficulty explaining prior cases:

> "With regard to the *discrepancies* between the definitions of offences, it will be seen, by reference to the Digest of the Law of Theft, that some of the definitions, agreeably to the Civil Law, make the *lucri causa,* or the intention of the thief to derive a profit from his crime, an essential part of the offence of theft; *whilst others omit this, regarding an intention to deprive the owner of his property, to be sufficient evidence of the crime.* In some cases, where the Courts have been anxious to reconcile the terms of ancient definitions with the more modern authorities, they have considered those terms to be satisfied by annexing a very vague and indefinite meaning to the term *lucrum.*"

*First Report from His Majesty's Commissioners on Criminal Law* 5 (Oxford 1834) (second emphasis added) (*Commissioners' Report*). The commissioners were unable to reconcile the principle of *The Fisherman's Case* with *Rex v. Morfit,* 168 Eng.Rep. 817 (1816), for example, in which servants who took their master's beans in order to feed their master's horses were held guilty of larceny. Some of the judges apparently were unconcerned about *lucri causa;* others said that it had been proven because the servants' "labour was lessened, so that the *'lucri causa,'* to give themselves ease, was an ingredient in the case." *Id.* at 817. The commissioners went on to recommend an intent requirement that apparently did not require *lucri causa.* *See Commissioners' Report, supra,* at 16–17.

Even if, as of July 4, 1776, the intent element of larceny required *lucri causa*, it is irrelevant here. This Court abandoned the *lucri causa* notion prior to the instant occurrence. In *Canton Nat'l Bank*, 111 Md. at 44–45, 73 A. at 685, we reviewed the split of opinion on *lucri causa* and indicated that it would no longer be required in Maryland. *Id.* at 45, 73 A. at 685. We held that *lucri causa* was not required for larceny in *Stebbing v. State*, 299 Md. 331, 352, 473 A.2d 903, 913, *cert. denied*, 469 U.S. 900, 105 S.Ct. 276, 83 L.Ed.2d 212 (1984), where the goods, the clothes of an intended rape victim, were taken under circumstances indicating pecuniary gain was not the motive. The prevailing view among authorities is that *lucri causa* is not an essential element of a theft crime. *See* 2 W. LaFave & A. Scott, *Substantive Criminal Law* § 8.5, at 357 (1986).

Our repudiation of any *lucri causa* requirement exercised this Court's power to change the common law and is applicable to Jupiter's conduct. *See Ireland v. State*, 310 Md. 328, 331, 529 A.2d 365, 366 (1987); *Jones v. State*, 303 Md. 323, 337 n. 10, 493 A.2d 1062, 1069 n. 10 (1985); *Pope v. State*, 284 Md. 309, 341, 396 A.2d 1054, 1073 (1979). Therefore, Jupiter cannot rely on *The Fisherman's Case* for the proposition that robbery requires an intent to deprive the possessor of value.

## II

Jupiter also apparently argues that he had a "claim of right" to the beer. Brief of Petitioner at 3. He does not particularize that argument, but claim of right is another possible explanation of *The Fisherman's Case*. The drafters of the Model Penal Code, for instance, apparently viewed *The Fisherman's Case* as a claim of right case. *See* Model Penal Code § 223.1(3) & commentary at 158 (1980).

Robbery is a common law crime in Maryland. *West*, 312 Md. at 202, 539 A.2d at 233. For that reason we shall apply common law claim of right principles in our discussion below, as opposed to the statutory version of claim of right

in the consolidated theft statute, Md. Code (1957, 1992 Repl.Vol.), Art. 27, § 343(c).

Jupiter, arguing within the reported facts of *The Fisherman's Case*, contends that those who force merchants of goods to sell their goods do not commit robbery because the merchants have been forced only to do what the merchants held themselves out as willing to do. The argument appears to be that Jupiter did not have the mens rea for robbery because he had a good faith claim of right to acquire the goods by paying for them; *i.e.*, he relied upon the "supposed consent" of the seller to yield the goods upon tender of the full price. *See* Model Penal Code § 223.1 commentary at 157 (1980).

There was no request that the jury in this case be instructed specifically as to claim of right, and there was no such instruction during the trial judge's principal instructions to the jury. The defendant did not except to the instructions, as given, on claim of right grounds. In response to a note from the jury, the trial judge gave a supplemental instruction on robbery which included the following: "If the property was taken under a good faith claim of an ownership interest, then the defendant could not have the required intent to steal." A juror then asked, "Could you explain to the jury what the fact that there was payment received has to do with the charge of robbery?" The judge replied:

"[I]f someone takes property under circumstances that makes it robbery or theft, then payment thereafter does not, is not a defense to that crime. It is a crime to take property, and ... you have to determine what happened and the intent at the time it was taken.... [I]f someone takes your property, and a year later comes in and says, I want to pay you for the property I took, I mean, that obviously doesn't change the fact that a crime occurred, but when you start getting the payment closer, that is where it causes some problems, but you have to determine what the intent was at the time it was done."

Jupiter's counsel did not except to these additional instructions. Thus Jupiter's argument is that he was entitled to a judgment of acquittal on motion because the evidence shows that he had a good faith claim of right to take the beer.

We shall assume that the holding of *The Fisherman's Case* is that the evidence of mens rea was insufficient as a matter of law to convict the fish "purchaser" because of a claim of right. But the facts in the case before us are not those of *The Fisherman's Case.* Here there is ample evidence that Jupiter knew that the seller was legally prohibited from selling the beer, and that Jupiter nevertheless forced the sale. Those facts in this case at least raise a jury question as to the good faith of any claim of right.

Moreover, claim of right as a defense to robbery has been limited in the 400 years since *The Fisherman's Case* was decided. There are strong public policy reasons why self-help, involving the use of force against a person, should not be condoned. For that reason most courts have tended to apply claim of right strictly under those circumstances. Courts have held that the defense does not apply unless the defendant was attempting to retrieve a specific chattel that was the subject of a prior claim of right; the defendant may not attempt to take money or property of equivalent value. *See Thomas v. State,* 584 So.2d 1022, 1025 (Fla.Dist.Ct. App.), *cause dismissed,* 587 So.2d 1331 (Fla.1991); *State v. Brighter,* 62 Haw. 25, 608 P.2d 855, 859 (1980); *People v. Reid,* 69 N.Y.2d 469, 515 N.Y.S.2d 750, 752–53, 508 N.E.2d 661, 664 (1987); *State v. Winston,* 170 W.Va. 555, 295 S.E.2d 46, 51 (1982); *Edwards v. State,* 49 Wis.2d 105, 181 N.W.2d 383, 387–88 (1970). Courts have held that the defense does not apply where the defendant attempted to retake the proceeds of illegal activity. *E.g., Cates v. State,* 21 Md.App. 363, 374, 320 A.2d 75, 82 (gambling losses), *cert. denied,* 272 Md. 739 (1974); *Reid,* 515 N.Y.S.2d at 752–53, 508 N.E.2d at 664 (drug money); *Commonwealth v. Sleighter,* 495 Pa. 262, 433 A.2d 469, 471 (1981) (opinion of Flaherty, J.) (gambling). A few courts have suggested that

the claim of right defense should be abrogated altogether as a defense to robbery, *see State v. Schaefer,* 163 Ariz. 626, 790 P.2d 281, 284 (Ct.App.1990); *Thomas,* 584 So.2d at 1026; *State v. Ortiz,* 124 N.J.Super. 189, 305 A.2d 800, 801–02 (1973); *Sleighter,* 433 A.2d at 471 (opinion of Flaherty, J.), although there is no consensus on this point, *see Brighter,* 608 P.2d at 859; *Winston,* 295 S.E.2d at 51; *Edwards,* 181 N.W.2d at 387.

These limitations on the defense are sometimes logically problematic. Courts rarely explain how removing the defense in robbery cases is consistent with the mens rea for the included crime of larceny, or why other criminal proscriptions, such as the ones against assault or extortion, *see* Art. 27, § 562B, are insufficient deterrents. Nonetheless, the public policy underlying these decisions is sound. In a complex and crowded world, legal process is necessarily the preferred alternative.

■ We need not undertake to describe specific instances in which the claim of right defense should not apply to robbery, and we decline the State's invitation to abrogate the defense altogether. It is sufficient for the purposes of this case to hold that the defense is not applicable to robbery when the transaction that the robbery effects would be illegal even if it were consensual.

The District of Columbia Court of Appeals adopted a similar view in *Townsend v. United States,* 549 A.2d 724, 727 & n. 6 (D.C.1988), *cert. denied,* 490 U.S. 1102, 109 S.Ct. 2457, 104 L.Ed.2d 1011 (1989). That case involved a forcible retaking of illegal drugs that the defendant claimed were his own. The court noted:

> "We have never held that a person can use forcible self-help to retake illegal drugs from another. Nor do we now, for to do so would be to give our imprimatur to an act the completion of which is itself a criminal offense...."

*Id.* at 727 n. 6 (citations omitted). An accused could not defend a drug-possession charge on the ground of lack of

knowledge that the possession of controlled dangerous substances is illegal; a person is charged with such knowledge. Similarly, an accused may not claim a right to take illegal drugs because, under the criminal law, one is charged with knowing that holding the drugs would be illegal. As a matter of law, the accused's claim of right is not in good faith.

The case before us differs from *Townsend* in that the criminal laws proscribing the sale of alcoholic beverages to apparently intoxicated persons are directed at the seller rather than the buyer. Nevertheless, it is reasonable to charge the buyer with knowledge that the transaction itself was illegal. *Cf. People v. Gates*, 43 Cal.3d 1168, 240 Cal.Rptr. 666, 675–76, 743 P.2d 301, 310 (1987) (claim of right defense fails as a matter of law when defendant "actually knows the transaction on which the 'right' is based is illegal"), *cert. denied*, 486 U.S. 1027, 108 S.Ct. 2005, 100 L.Ed.2d 236 (1988).

Accordingly, Jupiter was not entitled to a judgment of acquittal based on claim of right.[3]

JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS TO BE PAID BY THE PETITIONER, JOHN MITCHELL JUPITER.

Dissenting opinion by ELDRIDGE, J., in which ROBERT M. BELL, J., concurs.

ELDRIDGE, Judge, dissenting.

I cannot agree with the majority's holding that a larcenous intent, which is a requisite for conviction of common

---

3. Jupiter also submits that, if it is unclear whether his conduct constituted robbery, the doubt should be resolved in his favor. He cites cases dealing with principles of due process, ex post facto prohibition, and lenity in sentencing. But the elements of larceny, as a component of robbery, have existed for centuries. Due process is not violated because the research by the parties and by this Court has not disclosed a reported decision in which those elements coalesced in a fact pattern materially the same as that presented here.

law robbery, is not negated by the fact of full payment for goods held out for sale.

It is firmly established that larceny is an essential element of the common law crime of robbery. *Snowden v. State,* 321 Md. 612, 583 A.2d 1056 (1991); *State v. Gover,* 267 Md. 602, 298 A.2d 378 (1973); *Hadder v. State,* 238 Md. 341, 209 A.2d 70 (1965). Moreover, this Court has not eliminated the intent requirement of common law larceny. In *Stebbing v. State,* 299 Md. 331, 473 A.2d 903, *cert. denied,* 469 U.S. 900, 105 S.Ct. 276, 83 L.Ed.2d 212 (1984), and *Canton Bank v. Am. Bonding Co.,* 111 Md. 41, 45, 73 A. 684, 685 (1909), we held that the intent requirement of larceny need not include an intent to derive a personal profit. The State, however, still must establish that the defendant's intent in committing the larceny was *animus ferandi,* which means an intent to steal or to deprive. As the authorities reviewed below all hold, an intent to pay for the goods, with a present ability to do so, negates that required criminal intent.

Although the majority attempts to cloud the matter somewhat, it is clear as a common law principle, applicable in this State under Article 5 of the Maryland Declaration of Rights, that one who forces a sale of goods, which are held out for sale, is not guilty of robbery because there is no underlying larceny. *See, e.g.,* 2 Wayne R. LaFave & Austin W. Scott, *Substantive Criminal Law,* § 8.5(c) (1986) (if property taken is offered for sale, intent to pay or otherwise restore the equivalent, with such an ability, constitutes a defense to larceny); Rollin M. Perkins & Ronald N. Boyce, *Criminal Law,* 345 (3d ed. 1982) (it is not a robbery when a merchant is compelled by force to sell to one with whom he prefers not to deal, if the property is held for sale and he receives the full price); Model Penal Code, § 223.1(3) (1980) (it is a defense to theft that defendant "took property exposed for sale, intending to purchase and pay for it promptly"); 2 *Russell on Crime,* 1167 (Turner 10th ed. 1950) ("it has been considered that if the owner has the goods on sale, but refuses to sell them to a particular

person, it would not be felony if the latter took them, even by force, provided he throws to the owner the full price"); 4 William Blackstone, *Commentaries on the Laws of England*, 243 (Lewis 1897) ("it is doubted whether forcing a higgler ... to sell his wares, and giving him the full value of them, amounts to ... robbery"); 1 William Hawkins, *Pleas of the Crown*, Ch. 19, § 13 at 215 (Curwood 8th ed. 1824) (the opinion that "a man meeting another going with his goods to market in order to sell them, compel him to sell them to him against his will, he is guilty of robbery" is too severe, because the wrongdoer lacks a felonious intent); 2 East, *Pleas of the Crown*, Ch. 16, § 98 (1806) (referring to the *Fisherman's Case*, "[t]he felonious intent being as essential to constitute the offence of robbery as of larceny, it follows that if such intent be wanting ... it will only amount to a trespass"). As the authorities make clear, when the goods involved are generally held out for sale, when the defendant is willing to pay the full price for the goods, and when the defendant has the present ability to pay the full price, the "intent to steal" element of larceny is missing and the transaction is not a robbery.

The cases which have addressed this issue also support the view that one who is willing and able to purchase goods offered for sale is not guilty of larceny or robbery.

For example, in *Mason v. The State*, 32 Ark. 238, 239 (1877), three men, after eleven o'clock in the evening, went to a house where beer was kept for sale and called for some beer. The proprietor, Dixon, who was asleep in the room adjacent to the store area, refused to get up and sell the men beer. The next day, Dixon discovered that a window had been forced open, and a keg of beer had been taken out and placed on the porch. A gallon of beer, worth approximately thirty cents, had been taken. The men then returned, admitted they had taken the beer, and offered to pay Dixon $3.00 for the beer. Dixon refused to accept the payment, and thereafter the men were charged with larceny. The Supreme Court of Arkansas held that there was no larceny, stating (32 Ark. at 239–240):

"A felonious or criminal intent, is an essential constituent of larceny. It must always be averred in the charge, and is as necessary to be proven as the taking and carrying away. . . .

"The beer was taken on Saturday night; on Monday morning, before any complaint was made, the parties went to the owner and told him they had taken the beer, and offered to pay him for it. . . . Dixon kept beer for sale. . . .

"Where is the evidence of a design to fraudulently deprive Dixon of his property, or of an intention to take it without giving him a *quid pro quo* of equal value? If they intended to pay for the beer, how did they intend to defraud him?"

Similarly in *Lee v. Commonwealth*, 200 Va. 233, 105 S.E.2d 152 (1958), the Supreme Court of Appeals of Virginia reversed a conviction for larceny based upon the trial court's refusal to instruct the jury that Lee was entitled to an acquittal if the jury found that the defendant intended to pay and if fact did pay for the item, in this case a tire. The court stated (200 Va. at 236–237, 105 S.E.2d at 154):

"The issue in this case was a narrow one. The intent of Lee at the time he took the tire was the essence of the offense charged. If he took the tire with the intent to steal it, then he was guilty. If, on the other hand, he took the tire with the intent to pay and did pay the Pearce corporation therefor, he was not guilty."

In *Pylee v. State*, 62 Tex.Crim. 49, 136 S.W. 464 (1911), the defendant had taken oats from a field to feed the horses pulling his buggy. The defendant testified that he intended to pay for them and was heading toward the oat owner's house when he was apprehended. The defendant requested that the trial judge instruct the jury "that if appellant, when he took the oats, had no fraudulent intent, but took them with a view of paying for the same, and the jury so believed, he was entitled to an acquittal." The trial court refused to give the instruction, and the appellate court

reversed the conviction, stating (62 Tex.Crim. at 50, 136 S.W. at 464–465):

"The case is submitted to this court on the theory that these charges should have been given. We are of the opinion that his contention is correct. It is not all takings of property that is theft. The fraudulent intent must exist at the time of taking, and if this did not exist at that time the taker would not be guilty of theft. Appellant, we think, had the legal right to have this phase of the testimony submitted to the jury under the instructions requested."

Numerous cases involving charges of shoplifting also represent applications of the principle that, if one intends to pay the seller of goods the full purchase price of the goods, there can be no conviction for larceny. Intent to pay is frequently the disputed issue in shoplifting cases. *See, e.g., Barnes v. State,* 31 Md.App. 25, 354 A.2d 499 (1976); *Hugo v. City of Fairbanks,* 658 P.2d 155, 161 (Alaska App.1983); *People v. Jaso,* 4 Cal.App.3d 767, 84 Cal.Rptr. 567 (1970). In fact, because intent not to pay for items in a store is often difficult to prove in a shoplifting case, several states have rewritten the law of shoplifting to change the intent element from a larcenous intent to an intent to conceal. *See Hugo v. City of Fairbanks, supra.* This change was accomplished by statute, and in these states, shoplifting is different from the common law crime of larceny.

The treatises and cases reviewed above establish that a required element of the common law crime of larceny is an intent to steal or to defraud. If the defendant intends to pay for the goods, and they are goods held out for sale to the general public, then the intent element of larceny is absent.

The majority concludes, however, that a statutory regulation *aimed at the seller,* prohibiting him from selling alcohol to an intoxicated purchaser, alters this settled principle. Thus, the majority holds that where goods are held out for sale, and where a purchaser pays for the goods, but where a regulatory statute would preclude the *vendor* from selling

the goods under the particular circumstances, then the *purchaser* who takes and pays for the goods without the vendor's acquiescence commits a larceny. If force is used, the purchaser also commits robbery.

The majority does not even attempt to explain how, under this scenario, the *purchaser's* intent becomes different, or how the presence of the regulatory statute aimed at the vendor supplies an intent to steal on the part of the purchaser. The majority simply states that "[c]ourts rarely explain how removing the defense in robbery cases is consistent with the mens rea for the included crime of larceny." (opinion at 645–646). The majority goes on to indicate that such modification of the elements of the crime of robbery is good "public policy" (*id.* at 646) and is "reasonable" (*id.* at 647). In the past where this Court has changed the common law applicable to criminal cases so as to benefit the prosecution, we have made the changes entirely prospective, and not even applicable to the case before the Court. *See, e.g., Jones v. State,* 302 Md. 153, 161, 486 A.2d 184, 188–189 (1985); *Williams v. State,* 292 Md. 201, 219–220, 438 A.2d 1301, 1310 (1981); *Lewis v. State,* 285 Md. 705, 713, 716, 404 A.2d 1073, 1077, 1079 (1979) ("to now modify the common law rule and apply such change retroactively to validate the defendant's ... trial ... may, in our view, impinge upon basic fairness").

Furthermore, if the majority intends to change the mens rea element of larceny only under certain circumstances where a regulatory statute is involved and where the defendant purchaser takes and pays for goods without the seller's acquiescence, the majority fails to set forth any guiding and logical principles for identifying those circumstances where the "intent to steal" element is abrogated. On the other hand, if the majority contemplates the abrogation of the element of larcenous intent whenever a regulatory statute would proscribe the particular sale, the ramifications of its holding may be quite substantial. For example, suppose an underage youth enters an convenience store which sells alcohol, and the clerk on duty is away from the

counter. The youth picks up a six pack of beer, which costs $5.15. He brings it to the counter, waits a few minutes, and then, leaving $6.00 on the counter, leaves the store. Apparently under the majority's view, because the clerk would have been statutorily prohibited from making the sale, the youth is guilty of larceny.

A major flaw with the majority's approach is its focus upon the status of defendant instead of upon the intent of the defendant. Under well-settled legal principles, if goods are held for sale to the public, and the defendant forces a sale, the defendant is not guilty of the larceny or of robbery because of the absence of a larcenous intent. In the majority's view, however, if the goods are available for sale to the public, but due to the defendant's status are not available for sale to him, and the defendant forces a sale, the defendant is guilty of robbery. There is no support in reason or authority for this distinction based on the defendant's status. The majority does not cite a single case which, on the facts here, would hold that the defendant is guilty of robbery.

Although I would reverse the robbery conviction, I note that the defendant in this case was properly found guilty of a serious crime, namely assault. There is no need to distort the common law of larcenous intent beyond recognition in order to respond severely to the dangerousness of the defendant's act. Under Maryland law, the maximum term of imprisonment for assault is greater than the ten year sentence which was imposed in the instant case for robbery. As summarized in *Simms v. State*, 288 Md. 712, 714, 421 A.2d 957, 958 (1980),

"[i]n Maryland, assault is a common law crime for which the Legislature has not prescribed a penalty. Consequently, the only limitation upon the number of years of imprisonment to which one may be sentenced for assault is, ordinarily, the prohibition against cruel and unusual punishment contained in the Eighth Amendment to the United States Constitution and Articles 16 and 25 of the Maryland Declaration of Rights. *Gleaton v. State*, 235

Md. 271, 277–278, 201 A.2d 353 (1964); *Duff v. State*, 229 Md. 126, 127, 182 A.2d 349, *cert. denied*, 371 U.S. 898, 83 S.Ct. 199, 9 L.Ed.2d 130 (1962); *Burley v. State*, 226 Md. 94, 96–97, 172 A.2d 394 (1961)."

Sentences equal to or greater than the ten year robbery sentence received by the defendant here have been imposed for assault. *See, e.g., Roberts v. Warden*, 242 Md. 459, 219 A.2d 254 (1966); *Austin v. Director*, 237 Md. 314, 316–317, 206 A.2d 145, 147 (1965); *Gleaton v. State*, 201 Md. 353, 201 A.2d 353 (1964); *Adair v. State*, 231 Md. 255, 189 A.2d 618 (1963). Consequently, it is wholly unnecessary to confuse the law of robbery so that this defendant can be punished severely for his unlawful actions.

I would vacate the robbery convictions and direct that the case be remanded to the circuit court for imposition of a sentence on the assault conviction.

Judge ROBERT M. BELL has authorized me to state that he concurs with the views expressed herein.