# CIRCUIT COURT OF THE CITY OF NORFOLK

Commonwealth of Virginia

v.

Larry M. White

December 18, 2012

Case No. CR11-1357

By Judge Everett A. Martin, Jr.

The defendant was arrested on May 5, 2010, for robbery, use of a firearm in the commission of robbery, and possession of a firearm by a convicted felon. The General District Court appointed the Public Defender's Office to represent him the next day. In February of 2011, Catherine Jensen of the Public Defender's Office filed a motion to withdraw as counsel. The General District Court granted the motion and subsequently appointed Daymen Robinson.

During the pendency of the case in the General District Court, the defendant was sent to Central State Hospital for a restoration of competence. The defendant's preliminary hearing was held in April of 2011, and all charges were certified to the grand jury. The grand jury indicted the defendant on April 20, 2011.

On July 20, 2011, the Court relieved Mr. Robinson as the defendant's counsel and appointed Joseph Lindsey. On October 11, 2011, the Court relieved Mr. Lindsey as the defendant's counsel and appointed Duncan St. Clair.

On February 16, 2012, the case came before me on a plea of guilty. The defendant was brought out of the bullpen fairly early in the calling of the docket, and he balked at going through with the plea. He was rather agitated. At Mr. St. Clair's request, and with the consent of the bailiffs, the defendant's mother was allowed to go into a bullpen to speak with him. The defendant was again brought out near the end of the docket and he entered a plea of guilty to robbery pursuant to a plea agreement. He was still somewhat agitated. I accepted his plea of guilty and the plea agreement, under which a *nolle prosequi* was entered on the firearms charges and the

maximum sentence that could be imposed for the robbery was the midpoint of the sentencing guidelines. A presentence report was ordered returnable on May 18.

On March 7, the defendant, *pro se*, filed a motion to withdraw his plea of guilty. In the motion, the defendant repeatedly called Mr. St. Clair a liar; he claimed Mr. St. Clair forced him to plead guilty; he stated that he was told he might go home at sentencing but would not receive more than seven years. He also wrote that I had told him he could receive up to nineteen years and three months to serve under the plea agreement. The transcript shows Mr. Entas actually stated that. (Transcript, February 16, 2012, p. 6.)

On March 9, Mr. St. Clair filed motions to withdraw as counsel and to withdraw the plea of guilty. At a hearing on March 21, I relieved Mr. St. Clair as counsel and appointed Ms. Stanton. At the end of the hearing, the defendant addressed insulting language to me on two occasions. I twice found him in contempt of court and imposed two ten day jail sentences.

The motion to withdraw the guilty plea was first heard on September 20 with a subsequent hearing on October 31. The defendant's mother testified that Mr. St. Clair told her on the day of the plea that the defendant would do "no more than three to five years." (Transcript, September 20, 2012 ("Tr.") p. 13.) The defendant's brother testified similarly. (Tr. p. 29.)

The defendant also testified Mr. St. Clair promised him "three or five years" (Tr. p. 37), but the defendant further testified he told Mr. St. Clair he would not plead guilty. (Tr. pp. 39, 43-45, 51.) He denied he agreed to plead guilty if the gun charges were dropped. (Tr. p. 68.) He did hear and understand his exposure to a sentence of nineteen years and three months under the plea agreement. (Tr. pp. 76-78.)

Ms. Mordue testified she believes the defendant wanted to get the gun charges dropped and that he would plead guilty to the robbery. (Tr. p. 98.) Mr. St. Clair testified similarly. (Tr. pp. 112-13.) Mr. St. Clair also testified he never told the defendant he would get only three to five years (Tr. p. 116), and that he did tell him the guidelines midpoint was sixteen to seventeen years (Tr. pp. 118–19.) No inquiry was made at the hearings about why Mr. St. Clair told the defendant the midpoint of the guidelines was sixteen to seventeen years when it was thought to be nineteen years and three months. Exposure to an additional two years and three months incarceration is not *de minimis*. By the probation officer's calculation, the midpoint is nineteen years and five months. Sentencing Guidelines attached to the Presentence Investigation Report.

### Legal Standard for the Withdrawal of a Guilty Plea

> The withdrawal of a plea of guilty should not be denied in any case where it is in the least evident that the ends of justice will be subserved by permitting not guilty to be pleaded in its

place. The least surprise or influence causing a defendant to plead guilty when he has any defense at all should be sufficient grounds for permitting a change of plea from guilty to not guilty. Leave should ordinarily be given to withdraw a plea of guilty if it was entered by mistake or under a misconception of the nature of the charge; through a misunderstanding as to its effect; through fear, fraud, or official misrepresentation; was made involuntarily for any reason; or even where it was entered unadvisedly, if any reasonable ground is offered for going to the jury.

*Justus v. Commonwealth, 274 Va. 143, 153, 645 S.E.2d 284, 288 (2007) (quoting Parris v. Commonwealth, 189 Va. 321, 325-26, 52 S.E.2d 872, 874 (1949)).*

The Court of Appeals has construed *Justus* to require a defendant to establish that, first, the motion is made in good faith and, second, that there is a reasonable defense advanced in support of the motion. *Branch v. Commonwealth,* 60 Va. App. 540, 546, 729 S.E.2d 777, 780 (2012). The appellate courts have not defined what constitutes "good faith" in this context, but the requirement prevents a defendant from using a guilty plea as a subterfuge to manipulate the court. *Cobbins v. Commonwealth,* 53 Va. App. 28, 34, 668 S.E.2d 816, 819 (2008).

On brief, the defendant concedes he cannot prove the second requirement of the motion, a reasonable defense to the charge. However, as collateral proceedings may arise out of this motion, I think it appropriate to state my findings on the evidence presented.

### Good Faith

It is difficult to contemplate simultaneously the concept of "good faith" and the character of Larry M. White.

He is rude. He referred to the deputy clerk at the time of his plea as "some fat lady." (Tr. p. 41.) He referred to Ms. Mordue, who spent several hours with him discussing his case, as "that fat white lady." (Tr. p. 67.)

He is an ingrate. He was previously represented on these charges by three honest and conscientious attorneys: Catherine Jensen, Daymen Robinson, and Joseph Lindsey. He referred to each as "no good" and a "liar." (Tr. pp. 61-62, 66-67.)

He is mendacious. He admitted several times at the hearing that he lied during his plea colloquy. He then told at least one bald-faced lie during the first hearing. He first testified he could not read. (Tr. p. 55.) He then admitted he read the stipulation of facts and preliminary hearing transcript "all the time." (Tr. pp. 84-85.)

He is contemptuous of the courts. Transcript, March 21, 2012, pp. 8-9.

He is a four-time convicted felon. He has convictions for robbery, use of a firearm in the commission of robbery, larceny from the person, and narcotics possession. (Tr. pp. 68, 71.) He had been released on parole for his robbery conviction for only five months when he committed this offense. (Presentence Investigation Report, p. 4.)

I stated at the first hearing that I was not inclined to believe the defendant in the absence of corroboration. Nonetheless, there is, I regret, substantial corroboration of his claim that Mr. St. Clair promised him he would receive no more than a five year sentence. First, the mother and the brother so testified. Their testimony could be doubted as they have an obvious interest in the matter, but there is more.

Timmy Smith, an inmate who shared the bullpen of courtroom 3 with the defendant on February 16, also testified Mr. St. Clair told the defendant he would get three to five years. (Transcript, October 31, 2012 ("Tr. II") p. 13.) Mr. Smith's credibility might be called into question by his prior felony convictions (and his decision to proceed *pro se* before a jury on charges including possession of heroin with intent to distribute might call his judgment into question), but I found his credibility enhanced by his correct recollection that the defendant was twice removed from the bullpen that day and not returned the second time (when he was taken to a different bullpen so his mother could speak to him), and by his puzzlement at the defendant's state of agitation about a three to five year sentence for robbery, which he (Mr. Smith) thought was a "good deal." (Tr. II pp. 20, 26.)

The strongest corroboration comes from Mr. St. Clair's own words in the recorded telephone conversation he had with the defendant on February 15, the day before the defendant entered his plea of guilty. The defendant asked him: "What did they say about the three years or the five years or whatever?" Mr. St. Clair responded: "It's only going to be three." Com. Exh. 5, p. 2; Def. Exh. 1, p. 2, and Exh. 1A. The transcription in Def. Exh. 1 reads "It's only gonna be three." Having listened to the conversation, I find that Com. Exh. 5 is accurate.

At the first hearing, Mr. St. Clair testified his reference to three years concerned the defendant's *2001* conviction in this court for use of a firearm in the commission of robbery. (Tr. pp. 128-29.) That explanation is not credible. There was no discussion of prior crimes in the conversation. The phrase "going to be" refers to the future, not the past.

Further proof Mr. St. Clair told the defendant he would receive a three to five year sentence is his description of Mr. Entas's view of the case: "looks like he's gonna be pretty soft." Com. Exh. 5, p. 2, Def. Exh. 1, p. 2, and Exh. 1A. The transcription in Com. Exh. 5 reads "he will be" rather than "he's gonna be." Having listened to the conversation, I find that Def. Exh. 1 is accurate. Given the defendant's criminal record, a three to five year sentence for robbery would be pretty soft; a sixteen to seventeen year or nineteen year three month sentence would not be.

As I disclosed to counsel in my letter of September 25, Mr. St. Clair came to my office on September 21, and he told me the reference to "three" and "five" in the telephone conversation could have meant the courtroom in which the case would be heard the next day. This explanation is not credible for three reasons. First, the defendant said "years" after both "three" and "five." Second, earlier in the conversation Mr. St. Clair advised the defendant "to say yes sir and no sir to the judge, or yes ma'am and no ma'am if it turns out to be Ms. Hall." Judge Hall sits in courtroom 4. This indicates Mr. St. Clair did not then believe he would only be in either courtroom 3 or 5 the next day. Third, a review of the criminal docket of February 16 shows that criminal cases were heard in courtrooms 1, 3, 6, and 9 (and not in 5).

At the second hearing, Mr. St. Clair testified he did not hear the defendant very well. (Tr. II p. 32.) I have listened to the recording of the telephone call several times. The defendant did not say much and his speech was not always clear. The first time the defendant asked the question about the number of years, it was garbled, but Mr. St. Clair asked him to repeat his question. The second time the defendant asked the question it was easier to understand. After Mr. St. Clair said in response "It's only going to be three," the defendant asked "three?" and Mr. St. Clair answered "Yes." Then this exchange occurred:

> Defendant: Are they gonna shoot it down or are they gonna take it?
>
> St. Clair: I think they're going to take it, but it's obviously a pretty low thing, but we'll see if we can make it happen, my friend.

The transcription in Com. Exh. 5 varies in some immaterial particulars.

Considering all the conversation after the defendant first mentioned "three" and "five," I believe Mr. St. Clair understood the defendant's question.

I conclude from all this that the defendant was willing to plead guilty to robbery if the two firearms charges were dropped. Ms. Mordue's credibility was unimpeached, and I find Mr. St. Clair's corroboration on this issue to be credible. I do not believe the defendant's testimony that he told Mr. St. Clair he would not plead guilty.

I also conclude that Mr. St. Clair led the defendant to believe he would receive no more than a three year to five year sentence. I must therefore reject Mr. St. Clair's testimony that he never told the defendant he would receive a three to five year sentence and that he told the defendant before his plea that the midpoint of the sentencing guidelines was sixteen to seventeen years.

It is true the defendant knew he was subject to a sentence of nineteen years and three months by the end of his appearance on February 16. However, I doubt he knew that when he entered his plea, and I did not ask him any other questions after Mr. Entas stated what he understood the midpoint of the guidelines to be. I find the motion to withdraw the plea of guilty is made in good faith.

### Defense to the Charge

At the first hearing the defendant asserted the claim of right defense. (Tr. p. 93.) Ms. Mordue testified that the defendant told her the victim of the robbery owed him $50 from an earlier marijuana sale. (Tr. pp. 101-02, 107-08.) Ms. Stanton objected to this testimony, but I held the defendant had waived the attorney-client privilege by accusing Mr. St. Clair of having lied to him. *Grant v. Harris*, 116 Va. 642, 650-51, 82 S.E. 718, 720 (1914). Furthermore, the defendant offered a recording of one of his conversations with Mr. St. Clair into evidence before either Mr. St. Clair or Ms. Mordue testified. (Tr. pp. 35-36.) The defendant concedes on brief that he *may* not have a valid claim of right defense if he was owed money on an illegal debt. The concession is proper.

Although our Court of Appeals has not decided this issue, *Ortiz v. Commonwealth*, 2002 Va. App. LEXIS 31, at *10, n. 2 (2002), most courts have denied the defense to collect on an illegal bargain. *Jupiter v. State*, 328 Md. 635, 616 A.2d 412 (1992); *Coleman v. State*, 516 So. 2d 871, 875 (Ala. Crim. App. 1987); *People v. Gates*, 43 Cal. 3d 1168, 240 Cal. Rptr. 666, 743 P.2d 301 (1987); *Commonwealth v. Sleighter*, 495 Pa. 262, 433 A.2d 469 (1981); *People v. Karasek*, 63 Mich. App. 706, 234 N.W.2d 761 (1975); *Blain v. State*, 34 Tex. Crim. 448, 31 S.W. 368 (1900).

Furthermore, the defendant wrote in a letter to Mr. St. Clair: "Believe me or not, I did rob Charvis." (Com. Exh. 6.)

The defendant having failed to establish the second requirement for the withdrawal of his guilty plea, I deny the motion.

At the end of his brief, the defendant argues that I should sentence him to the three years Mr. St. Clair promised and that he would have "clear" grounds for relief on appeal or by habeas corpus if I should impose a longer sentence. That may be so. Mr. St. Clair's actions may have unwittingly worked to the defendant's advantage. This can be argued at sentencing.